**In the Matter of Biagio J. PERRELLO.**

No. 678S105.

Supreme Court of Indiana.

March 5, 1979.

## OPINION CONCERNING CONTEMPT HEARING

PIVARNIK, Justice.

This is an original action wherein Respondent, Biagio J. Perrello, was held to be in indirect criminal contempt of the Supreme Court of Indiana and was sentenced to ninety (90) days on the Indiana State Farm.

On June 12, 1978, the Supreme Court Disciplinary Commission brought disciplinary proceedings against the Respondent and also filed with this Court a Motion for Temporary Suspension of the Respondent pending the outcome of said disciplinary proceedings. On August 11, 1978, a hearing officer, pursuant to notice and orders, conducted a hearing on the above Motion for Temporary Suspension and on August 17, 1978, filed with the Court his findings on the Motion for Temporary Suspension and recommended that the Respondent be suspended from the practice of law pending final determination of the disciplinary proceedings. On September 13, 1978, the Supreme Court, 380 N.E.2d 72, entered an order of suspension pursuant to Ind.R.Adm. & Dis. 23 § 15(b), in which the Respondent, Biagio J. Perrello, was suspended from the practice of law pending final determination of this cause and was ordered to cease and desist from any and all further acts and activity as an attorney at law of this State until further notice. This suspension order is still in effect.

On November 16, 1978, the Disciplinary Commission filed a Petition for Order to Show Cause against the Respondent, alleging facts that had come to its attention tending to show that the Respondent was continuing to practice law in violation of the suspension order of this Court. Order to Show Cause why he should not be held in contempt was issued by the Court on November 17, 1978. On November 22, 1978, the State filed an Amended Verified Petition for Order to Show Cause, a Verified Supplemental Petition for Order to Show Cause and an Order to Show Cause was entered by the Court on November 22, 1978.

A hearing was held in this matter on January 30 and 31, 1979, and evidence was taken. The evidence presented by witness-

Sheldon A. Breskow, Disciplinary Commission, Indianapolis, for petitioners.

M. Anne Wilcox, Ralph Ogden, Indianapolis, for respondent.

es called by the Disciplinary Commission pertinent to these charges indicated that the Respondent continued to maintain his law office located at 1424 Circle Tower Building; that he was daily in and about the 2nd and 6th floors of the City County Building adjacent to the areas occupied and used by the Municipal Courts and the Criminal Courts of Marion County; that while in those areas, he discussed matters with persons scheduled to appear in those courts, giving them legal advice regarding their defenses, collecting fees from them and arranging to represent them either himself or through another attorney who would actually appear in court with them.

Indianapolis Police Officer Ernie Todd testified that during periods in September and October of 1978, he saw the Respondent in and about the 2nd Floor of the City County Building and the Police Station nearly every day talking to people who had business with the courts. On September 14, 1978, Todd saw him talking to a white male person and overheard him telling this person that he needed a lawyer and gave him a business card on which appeared the Respondent's name, the designation Attorney at Law, an office number and telephone number.

Thomas Bratton testified that on November 13, 1978, he went to the area of the Municipal Courts in the City County Building to appear on a traffic violation and saw the Respondent in the hallway. He testified that the Respondent told him he needed a lawyer to appear in Court but that he, Bratton, told the Respondent that he had no money to hire a lawyer. The Respondent then advised Bratton to call him and gave him one of his business cards which again carried the designation, "Attorney at Law," an office number and telephone number.

Kenneth Morlock testified that he was arrested for a traffic violation in October, 1978, and was charged with unsafe starting. He appeared in the area of the Municipal Courts on October 13, 1978, and saw the Respondent in the hallway. He testified that he knew the Respondent and recognized him. He asked the Respondent if he was at the right place and the Respondent inquired of him as to the purpose of his appearance. The Respondent then examined the ticket the witness had received and advised him that he would take care of it for him for $75. Morlock then paid Respondent $60 and Respondent gave him his card with the name of Robert Lehman written on it. He testified that he did not know Robert Lehman and that he never hired Robert Lehman nor authorized him to appear in his behalf. He later called the Respondent and asked him for his money back when things did not work out as well as he had hoped but Respondent advised him that everything was taken care of and not to worry about it.

Randy Lopez testified that in the summer of 1978 he received a traffic ticket for which he was to appear in Municipal Court 12, Beech Grove, Indiana, in August, 1978. Lopez appeared for Court in August and while waiting for Court to begin, was approached by Perrello. Perrello offered to take care of his ticket for $75. Lopez paid Perrello $75 and left the Court. On October 24, 1978, Lopez received official notice that his ticket had been refiled and that he was to appear in the Beech Grove Court on December 20, 1978. On October 24, 1978, Perrello telephoned Lopez and informed him that his ticket had been refiled. Lopez told Perrello that he had paid him $75 to dispose of the case. Perrello then told Lopez that he would appear in Court with him on December 20, 1978, but that Lopez would have to pay Perrello an additional fee. Perrello did not advise Lopez that he could not appear in Court with him or that he would have someone else appear in his behalf.

Joseph Riggs testified that on July 14, 1978, he received a traffic ticket in Hendricks County. Respondent Perrello appeared on behalf of Riggs and filed pleadings for him. Arrangements were made for installment payments that totalled $350. On September 5, 1978, Perello appeared with Riggs and requested a continuance which was granted until September 19, 1978. On that date, Riggs appeared without counsel, entered a plea of not guilty and

asked for a trial by the Court. Perrello did not withdraw his appearance. The trial was eventually set for October 30, 1978. On that day, Riggs appeared with Attorney Arthur Murphy. He changed his plea to guilty and received a two-day suspended jail sentence, a $50 fine, and was ordered to pay the costs.

Judge John C. Mowrer, regular Judge of the Hendricks Superior Court 2, in which Riggs appeared on October 30, 1978, testified that he saw the Respondent in the courtroom on October 30, 1978, sitting with Defendant Riggs. When the case was called Riggs came to the bench with Attorney Murphy, rather than Respondent.

William Levy testified that he is a part-time judge in the Municipal Court and was so sitting on November 21, 1978. He testified that he saw witness Kenneth Morlock and Respondent Perrello in conference outside the building where Court was held on that date. Respondent had a uniform traffic ticket in his hand and Morlock had his hand on his back pocket.

Attorney Arthur E. Murphy testified that he represented witness Riggs in Hendricks County Superior Court in the cause above referred to and received $50 from Perrello for such representation. He testified that he did not know that Perrello had received a total of $500 from Riggs. He further testified that he represented fifty or sixty persons, who were Perrello's clients, when they went to Court for the actual trial of their causes and received $50 from Perrello for each of these cases. Not all of these cases were tried during the period of suspension under consideration here, however, a number of them were.

Attorney Robert Hughes testified that he is an attorney with a practice in Indianapolis and has his offices at 1413 Circle Tower, which is the same floor where Respondent's office is located. He knew the Respondent and knew the location of the Respondent's offices at 1424 Circle Tower. He testified that during the period of suspension he observed the Respondent's office open; the designation of Counselor at Law or Attorney, on the door; the door was open; the lights were on; a secretary was at the desk typing matters concerned with the practice of law; telephone conversations going on, and people in and about the office in conversation with the Respondent and his secretary.

Attorney Richard Kammen testified that he observed many of the same things in regard to Respondent's offices as Attorney Hughes had noted in his testimony. Kammen further testified that he practices criminal law on the 2nd and 6th floors of the City County Building and saw the Respondent there on a daily basis during the period of this suspension. He testified that the directory at the Circle Tower Building carries Respondent's name and office number and that his office carries the designation of Counselor at Law.

■ In order to carry its burden the Disciplinary Commission needed to prove, beyond a reasonable doubt, that the Respondent committed or transacted one act which constituted the practice of law. The evidence above set out shows conclusively that the Respondent was, in fact, engaged in the general practice of law. Indeed, it can be observed from the evidence that the only curtailment of Perrello's practice of law affected by the suspension order was that he ceased making personal appearances on behalf of his new and old clients in state courts.

■ In addition to the above witnesses, the Disciplinary Commission listed several witnesses whose testimony related to activities of the Respondent which took place after he was served with the Order to Show Cause. Respondent objected to the testimony of these witnesses on the grounds that since these were acts that took place after the Show Cause Order was served on him, and these charges were not enumerated in said Order, that they were beyond the scope of this inquiry and therefore the witnesses were not competent to present evidence against him as to his guilt or innocence. In response to this, the Disciplinary Commission asserted its right to offer this evidence for the same reasons that such evidence is

traditionally admissible in criminal cases. The general rule is that in a prosecution for a particular crime, evidence which shows that the defendant committed a similar crime which is separate and distinct from the offense for which he is on trial, is irrelevant and inadmissible. *Roddy v. State*, (1970) 254 Ind. 50, 257 N.E.2d 816. However, a well established exception to this rule is that where the act constituting the crime charged has been established, then any evidence of another crime or act which tends to show that the defendant is guilty of the crime charged or any evidence that tends to show motive, intent, identification, guilty knowledge or a common scheme or plan if in issue, is admissible. *Hensley v. State*, (1969) 251 Ind. 633, 244 N.E.2d 225; *Woods v. State*, (1968) 250 Ind. 132, 235 N.E.2d 479. Evidence which is otherwise competent or relevant and which tends to establish the defendant's guilt of the crime charged should not be excluded merely because it proves or tends to prove him guilty of another and distinct crime, especially where the two crimes are connected and bear a definite relationship to each other. *Kiefer v. State*, (1960) 241 Ind. 176, 169 N.E.2d 723, *cert. denied*, (1961) 366 U.S. 914, 81 S.Ct. 1089, 66 L.Ed.2d 238; *Gears v. State*, (1932) 203 Ind. 380, 180 N.E. 585. The Court overruled Respondent's objection and admitted the evidence.

The State then called Verneda Arnold who testified that she first saw the Respondent in the City County Building when she appeared there for a charge of shoplifting on December 20, 1978. He spoke to her and told her she needed an attorney. She asked him if he was an attorney and he said "Yes," he was. He told her he would call one of his associates to appear in court with her and asked her if she had $100. She said she did and, in the presence of Respondent, paid $100 to Sharon Griswold, who had been identified by several witnesses as Perrello's secretary. Miss Griswold then gave Arnold a receipt for the money. Attorney James Miller subsequently appeared in court for Arnold and obtained a continuance to January 31, 1979. Later in the month of December she visited Perrello in his office and discussed additional fees. He requested an additional $750 to be paid by January 5. On January 5, she did pay him an additional $750 for fees in this cause. She never paid Attorney Miller anything and did not see him after this date.

Jeff Shipley testified that he first met the Respondent on November 23, 1978, in the City County Building where Shipley appeared on charges of driving while under the influence, public intoxication, theft, and possession of marijuana. He asked the Respondent where Court Room 5 was and the Respondent asked him if he had a lawyer. He said "No," he did not have one and the Respondent told him he would have to have one to go into court on those charges. He further asked Shipley for $100 as a fee. Shipley paid the $100. He next saw the Respondent in the Respondent's office where fees were discussed. They were to be $100 for the public intoxication charge and $500 each on the other charges for a total of $1600. Respondent told Shipley he was a behind the scenes worker and that he would get at least two charges dropped. He stated that the maximum Shipley could expect to get would be one year's probation and a $150 fine. He further stated that at the end of the probation period he would have no criminal record whatever from these charges. He told Shipley that he would get another lawyer to represent him in court as he, the Respondent could not appear in state courts in these matters and handled only matters scheduled in the federal courts. Shipley paid him a total of $1425 toward the fees. Attorney Robert Lehman appeared for him one time in court and Attorney Jim Miller appeared on another occasion. Perrello told Shipley not to tell the other lawyers how much he had paid in fees to Perrello. On January 17, when Shipley appeared in court, Perrello made a phone call and Attorney Jim Miller appeared and went into court with him. The only time Shipley talked to Lehman or Miller was at his court appearances. All other conversations were with Perrello.

Respondent attempted to call four witnesses which he qualified as experts in

the area of professional responsibility by reason of their being practicing attorneys or law school professors. It was indicated by the Defendant that these witnesses would testify that there are two distinct areas in the practice of law: the practice end and the business end of handling a law practice. Respondent further indicated that the witnesses would testify that the business end of the practice was not the practice of law as contemplated in the suspension order. The testimony of these witnesses was excluded by the Court on the ground that it invaded the province of the Court. It is the province of this Court to determine what the practice of law is, and the opinions of experts on the subject are not proper evidence. We might say however, that we do not recognize a division of the practice of law into a practice side and a business side. To manage any profession, there are incidental business elements that are a part of the total process. The performing of these business processes are a part of the total process and certainly cannot be separated and isolated from the total transaction. The conducting of the business management of a law practice, in conjunction with that practice, constitutes the practice of law.

█ Respondent further offered several witnesses to prove that during this period of suspension in question here, he handled several matters in the federal district courts for the Southern District of Indiana. His evidence showed that he counseled with clients on federal matters such as bankruptcy, and appeared in court for them during this period. He stated this was the purpose of keeping his office open and working in it, thus his practice was in the federal courts and not the state courts. His contention was that the suspension order of this Court was directed only to the practice of law in state courts and that this Court had no jurisdiction to restrict his practice in the federal courts.

█ Our Indiana Constitution provides that the sole authority and responsibility for the practice of law in Indiana is in the Supreme Court of Indiana. Ind.Const. Art.

7 § 4. We take judicial notice of the fact that before one may be admitted to practice in the federal courts located in this state, one must first be admitted to the practice of law by the Supreme Court of Indiana or by some other state.

The federal courts have no separate or additional test or qualifications required for practice before them. It cannot be said that the practice of law before the federal courts, together with the incidental counseling with clients in a private office for that purpose, is not the practice of law. While we cannot presume to tell the federal courts who they may permit to practice before them nor set the standards, qualifications, or limitations they might place on such persons, we nevertheless consider the practice of law in the federal courts in this State to be the practice of law for the purposes of this action. This same question arose in the Supreme Court of Pennsylvania and that Court found, as we do, that practice in the federal courts in the jurisdiction of the Supreme Court of Pennsylvania is the practice of law within their jurisdiction. *Ginsburg v. Kovrak*, (Pa.1958) 392 Pa. 143, 139 A.2d 889.

█ The evidence conclusively shows, beyond a reasonable doubt, that the respondent was practicing law in violation of the suspension order and therefore is guilty of indirect criminal contempt of this Court. The core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney. The undertaking to minister to the legal problems of another creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another. It is the opinion of this Court that merely entering into such relationship constitutes the practice of law.

█ We found the Respondent guilty of indirect criminal contempt of the Supreme

Court of Indiana and consider ninety days on the Indiana State Farm an appropriate punishment in light of our previous action taken against this same Respondent wherein he received a sentence of thirty days confinement. *In Re Perrello*, (1973) 260 Ind. 26, 291 N.E.2d 698. We reiterate our earlier statement that:

> "The punishment imposed is a vindication of the Court's authority but we also hope that it will act as a deterrent for this Respondent and all others who might harbor the thought of defying an order of this Court.
>
> .      .      .      .      .
>
> We hope this emphasizes the honesty and integrity which this Court expects of all attorneys. Open defiance of the orders of this Court will not be countenanced." *Id.* at 260 Ind. 31, 291 N.E.2d 701.

This opinion is in furtherance and support of the Order of this Court filed February 1, 1979, committing the Respondent to the Indiana State Farm for ninety days.

All Justices concur.