561 A.2d 200

Thomas F. KENNEDY

v.

The BAR ASSOCIATION OF
MONTGOMERY COUNTY, INC.

No. 101, Sept. Term, 1988.

Court of Appeals of Maryland.

July 26, 1989.

648

Richmond T.P. Davis, Silver Spring, for petitioner.

Douglas L. Lashley (Frank, Bernstein, Conaway & Goldman, both on brief), Bethesda, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

RODOWSKY, Judge.

Appellant, Thomas F. Kennedy (Kennedy), is a member of the Bar of the District of Columbia Court of Appeals and has been admitted to practice before the United States District Court for the District of Maryland, but has never been admitted to the bar of this Court. In this injunction action the Circuit Court for Montgomery County found, among other facts, that Kennedy "has deliberately attempted to circumvent the provisions of the [Maryland] Code and the Maryland Rules, so as to engage in an extensive and systematic practice of law [in the State of Maryland], both in Court and out of Court, while not being licensed to practice in the State of Maryland." On this appeal Kennedy does not challenge the trial court's fact-findings. He questions only the scope of the permanent injunction which was issued against him, contending (1) that he may maintain an office in Maryland for the practice of "federal" and "non-Maryland" law, and (2) that in certain particulars the injunction is overbroad. For the reasons hereinafter set forth, we basically reject Kennedy's first contention but agree with portions of his second contention.

In March of 1977 Kennedy was admitted by examination to the District of Columbia Bar. Kennedy continued his then full-time job with the Department of State and practiced law for his own account in the evening out of offices at 1025 Fifteenth Street in the District of Columbia. Those offices were headed by the building's owner, Milton E. Canter (Canter), who was also Washington counsel for a

New York law firm. Kennedy left the State Department in April 1978 and practiced full time as a solo practitioner in Washington. During that period the District of Columbia professional disciplinary authorities informally admonished Kennedy. *In re Kennedy*, 542 A.2d 1225, 1231 n. 11 (D.C.App.1988).

In May of 1981 Kennedy assisted, on an emergency basis, a member of the Maryland Bar, Van S. Powers (Powers), in a trial in Pennsylvania. Thereafter Powers and Kennedy entered into an arrangement whereby Kennedy worked out of Powers's office in Hyattsville, Prince George's County, Maryland under supervision and without making court appearances. That relationship ended acrimoniously in February 1984. Each attorney filed a disciplinary complaint against the other in the District of Columbia. Kennedy's complaint against Powers was dismissed. Kennedy's appeal and exceptions to a recommendation that he be suspended for one year and one day were pending before the District of Columbia Court of Appeals when the instant case was tried in Montgomery County. Kennedy also sued Powers civilly and that claim was eventually settled. In that action Kennedy contended that he and Powers were partners.

From December 15, 1981, until November 28, 1983, while Kennedy was working out of the office in Hyattsville, he was suspended by the District of Columbia authorities from the practice of law because of nonpayment of dues. Kennedy states that he was unaware of the suspension, notice of which had been sent to him by registered mail. He explains that he did not go to the post office to pick up the registered mail because he assumed it was from one of his creditors. As soon as Kennedy learned of the suspension, he paid the dues and was reinstated.

When Kennedy's arrangement with Powers terminated, Kennedy formed a partnership for the practice of law with Edward Jasen (Jasen), a member of the Maryland and District of Columbia Bars, who was then sixty-seven or sixty-eight years of age. Jasen had been practicing out of

Canter's office at 1025 Fifteenth Street but Jasen's income from his practice had diminished by approximately seventy-five percent due to the withdrawal from activity in Washington of the New York law firm with which Canter had been connected. Kennedy envisioned that the core of a practice with Jasen would be collection work for doctors in which the attorneys would utilize state of the art computerized procedures. Kennedy's share of any firm profits was to be seventy-five percent and Jasen's, twenty-five percent.

The law offices of Jasen & Kennedy were established in 1984 in Silver Spring, Montgomery County, Maryland, first at 8720 Georgia Avenue and thereafter at 1015 Spring Street. The heading of the firm's legal stationery presents the Silver Spring address in the center while, in small type to the right of the heading, the address at 1025 Fifteenth Street, D.C. also appears. On the left of the heading of the stationery symbols indicate that Jasen is admitted in "MD., D.C. & U.S. Courts" and that Kennedy is admitted in "D.C. & U.S. Courts Only." In the October 1985 yellow pages telephone directory of C & P Telephone Co. for Montgomery and Prince George's counties, Kennedy's name was listed in the lawyers' section in bold type. His name was followed by a one and one-half by two inch box ad for "Jasen & Kennedy Silver Spring & D.C. Offices." Only the Silver Spring address and telephone number were set forth in the ad which in part described the firm as engaged in "General Practice Of Law." In the same yellow pages directory for October 1986 through September 1987 there appears in the "coupon section" a three and three quarter inch by one and three quarter inch ad for Jasen & Kennedy which gives only the Silver Spring address and telephone number. In the lawyers' section of the yellow pages for that same twelve month period, under Kennedy's name, is a one and a half inch by two inch ad for Jasen & Kennedy giving both the Silver Spring and Fifteenth Street addresses and telephone numbers. Kennedy's professional card also lists both addresses.

The address at 1025 Fifteenth Street was used by Jasen & Kennedy almost exclusively as a mail drop. Jasen & Kennedy had no office space reserved there, no employees there, paid no rent there but, through an arrangement with Canter, could receive mail and maintain a telephone listing there. Telephone calls placed to the Jasen & Kennedy listing for 1025 Fifteenth Street were electronically forwarded to the Silver Spring office. The trial court found that "[t]he purported office of the Defendant maintained in the District of Columbia is a sham and is not an office for the practice of law by the Defendant as defined by Rule 1–312(b) of the Maryland Rules." [1]

Kennedy produced ninety percent of the business for the firm, and did eighty to ninety percent of the work done by the firm in the office. The practice became sufficiently extensive to justify employing five secretaries. The collection practice, consisting principally of claims by Maryland based doctors against Maryland residents, involved approximately 4,200 open files when the firm's computer system was converted to a new programming language. Whenever counsel was required physically to appear in a Maryland court, Jasen and Kennedy almost always presented themselves together before the court. But Jasen rarely moved for Kennedy's *pro hac vice* admission pursuant to Rule 20 of the Rules Governing Admission to the Bar.[2]

---

1. Maryland Rule 1–312(b) reads:
 "**Definition of 'Office for the Practice of Law'**.—In this Rule, 'office for the practice of law' means an office maintained for the practice of law in which a substantial amount of the attorney's time is usually devoted to the practice of law during ordinary business hours in the traditional work week. An attorney is deemed to be 'in' such an office even though temporarily absent from it if the duties of law practice are actively conducted by the attorney from that office."

2. Rule 20 reads:
 "**Special Admission of Out-of-State Attorneys**
 a. *Motion for Admission of Out-of-State Attorney*
 An attorney of record in any case pending in any court of this State or in any agency or commission of this State or any political subdivision thereof may file a written motion to admit to practice

Kennedy sat for and passed the February 1985 Maryland bar examination but was never admitted to the Maryland

---

an attorney who is a member of the Bar in good standing of another State, District or Territory of the United States including Puerto Rico, for the limited purpose of appearing and participating in the case as co-counsel with the movant. The attorney whose special admission is moved shall certify in writing the number of times he had been specially admitted in this State during the preceding twelve months. The certificate may either be made in a separate pleading or be incorporated at the end of the motion under an appropriate heading. In a case pending in an agency or commission the motion shall also (1) be filed in the circuit court for the county in which the principal office of the agency or commission is located or in any other circuit court to which the case may be appealed, and (2) include a certificate by the movant that copies of the motion have been furnished to the agency or commission and to all parties of record.

 b. *Order*

The court may by order admit specially or deny the special admission of an attorney. In either case, the clerk shall forward a copy of the order to the State Court Administrator, who shall maintain a docket of all attorneys granted or denied special admission. When the order admits specially or denies the special admission of an attorney in a case pending in an agency or commission, the clerk shall also forward a copy of the order to the agency or commission.

 c. *Limitations on Out–of–State Attorney's Practice*

An attorney specially admitted may act as co-counsel for a party represented by an attorney in the case admitted to practice in this State. The specially admitted attorney may participate in court, agency or commission proceedings only when accompanied by the Maryland counsel, unless the latter's presence is waived by the judge or officer presiding over the case."

The Note of the Rules Committee to Rule 20 advises that a numerical limitation was not placed on the number of appearances because "[s]pecialized expertise of out-of-state attorneys or other special circumstances may be important factors to be considered by judges in assessing whether Maryland litigants have access to effective representation." Rule 20 "is not intended, however, to permit extensive or systematic practice by attorneys not licensed in Maryland." The Committee was concerned with use of Rule 20 to circumvent Rule 14 and noted that attorneys appearing *pro hac vice* do not contribute to the Clients' Security Trust Fund. Rule 14 of the Rules Governing Admission to the Bar provides for the admission by certain out-of-state attorneys essentially (1) upon passing an examination limited to the Maryland Rules of Procedure, the Maryland District Rules and the Rules of Professional Conduct, and (2) upon satisfying the Board of Law Examiners that the applicant is a person of good moral character. *See* Rules of the State Board of Law Examiners, Rule 3 and Rule 14.g. of the Rules Governing Admission to the Bar.

Bar because of the unresolved disciplinary proceedings pending against him in the District of Columbia.

On November 13, 1985, the Unauthorized Practice of Law Committee of the Montgomery County Bar Association wrote to Kennedy advising him of complaints and of the committee's willingness to accept Kennedy's "certification as an officer of the Court of Appeals for the District of Columbia" that he would immediately desist performing any activities which constituted the practice of law in Maryland. Under date of November 29, 1985, as D.C. Bar Member No. 924068, Kennedy signed the following certification:

> "I CERTIFY that I will immediately and henceforth comply with the Maryland Rules Governing Admission to the Bar, and specifically with Rule 20 and with Article 10 of the Annotated Code of Maryland and that I will not engage in the practice of law in the State of Maryland without having been admitted to practice in accordance with the referenced Rules and Statute." [3]

Thereafter Kennedy continued to represent clients before Maryland courts without seeking a Rule 20 admission. In a May 12, 1986 letter to a representative of the Montgomery County Bar Association, Kennedy represented that he had "continued to abide by the certification" which he had made in November 1985. Under cross-examination at the trial of this case Kennedy admitted that his May 1986 representation was not true.

In the fall of 1986 and through the winter of 1987 Kennedy, in the company of Jasen and without seeking a Rule 20 admission, presented himself as defense attorney in several criminal matters before Judge L. Leonard Ruben in

---

3. Kennedy's correspondence with the Unauthorized Practice Committee was on Jasen & Kennedy stationery headed by the Fifteenth Street address in Washington, D.C., with the Silver Spring address placed to the right of that heading.

the Circuit Court for Montgomery County.[4] They involved either guilty pleas or dispositions following guilty pleas. At trial in this case Kennedy's explanation was that he "[j]ust messed up." He said:

"[W]e tried to do what we thought was right. And, like I said, I think the particular moving force of that was always my father, and not wanting to be any kind of embarrassment to him. But I—I can't explain it other than I didn't [seek Rule 20 admission]. I don't fault Ed Jasen. I don't fault anybody. I'm an attorney. I take pride in the work that I do, and I think that I do good work."

In April 1987 the Bar Association of Montgomery County filed in the circuit court for that county a complaint against Kennedy seeking interlocutory and permanent injunctive relief against his unauthorized practice of law, based on Md.Code (1957, 1987 Repl. Vol.), Art. 10, §§ 1, 26A, and 32(a).[5] The court issued a preliminary injunction on May 14,

---

4. This Court, by order dated April 15, 1986, adopted the Maryland Rules of Professional Conduct, effective January 1, 1987. Rule 8.5(b) of the Rules of Professional Conduct in part provides:
 "A lawyer not admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for conduct that constitutes a violation of these Rules and that:
 (1) involves the practice of law in this State by that lawyer, or
 (2) involves that lawyer holding himself or herself out as practicing law in this State[.]"
 Rule 5.5 of the Rules of Professional Conduct provides that "[a] lawyer shall not ... practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction[.]"
 In view of the fact that Kennedy engaged in the unauthorized practice of law after January 1, 1987, we direct the Clerk of this Court to send a copy of this opinion to Bar Counsel.

5. Article 10, § 1 in relevant part provides:
 "A person ... may not practice the profession or perform the services of an attorney-at-law within this State without being admitted to the bar as hereinafter directed; and any person who shall give legal advice, represent any person in the trial of any case at law or in equity including the trial of any case before the District Court or any proceedings conducted in orphans' courts of this State [with certain exceptions not here pertinent] or prepare any written instrument affecting the title to real estate, or give advice in the adminis-

1987. Trial on the issue of a permanent injunction was held over four days concluding April 19, 1988, when the court issued the injunction now on appeal. Witnesses included Judge Ruben, clients of Kennedy, Kennedy's personal secretaries, an attorney who had referred his client to Kennedy, an investigator who had sought Kennedy's representation in defense of a purported DWI charge in Maryland, Powers, Jasen, and Kennedy. Their testimony, together with court files and audio tapes of court proceedings, fully support the circuit court's general and specific conclusions concerning Kennedy's practicing law in Maryland. In addition to fact-findings previously set forth, the circuit court found:

"3. The Defendant has failed to comply with the letter or the spirit of [the preliminary injunction].

. . . .

"5. The Defendant has given legal advice to clients for pay or reward within the State of Maryland. . . .

---

tration of probate of estates of decedents in any of the orphans' courts of this State, for pay or reward shall be deemed an attorney-at-law for purposes of this article."

Section 26A provides:

"(a) *By Attorney General.*—Upon his own information or upon complaint of any person, including the bar counsel, any judge, or any organized bar association in this State, the Attorney General may maintain an action for injunctive relief in the circuit court of any county against any person who renders, offers to render, or holds himself out as rendering any service which constitutes the unauthorized practice of the law. Any organized bar association in this State or the bar counsel may intervene in the action, at any stage of the proceeding, for good cause shown.

(b) *By bar association or bar counsel.*—The action may also be initiated and maintained by any organized bar association in this State, or by the bar counsel."

Section 32(a) provides:

"(a) *Generally.*—Any person who exacts, demands, takes, or receives from any person whatsoever any fee, gratuity, gift or reward for his advice or service as an attorney at law without having been admitted to the bar agreeably to the provisions of this article is guilty of a misdemeanor, and upon conviction is liable to a fine of not more than one hundred dollars, or confinement in jail for not more than thirty days, or both fine and imprisonment, in the discretion of the court."

"6. The Defendant has represented various persons before the Courts of the State of Maryland. . . .

"7. The Defendant has prepared written instruments, including Wills and Court pleadings, within the State of Maryland. . . .

"8. The Defendant has signed and filed pleadings and papers in various Courts within the State of Maryland, without having such documents co-signed by an attorney admitted to practice in the State of Maryland. . . .

"9. The Defendant has repeatedly ignored and violated the mandates of Maryland Rule 20 after notice from the Bar Association of Montgomery County and a specific agreement by the Defendant to comply with this Rule.

"10. The Defendant's actions prejudice the interests of the general public and, specifically, people who consult him, because they . . . have no protection of the Client Security Fund of the State of Maryland, and their potential recovery in valid claims is reduced by the Defendant's inability to litigate such claims in the Maryland Courts.

"11. The Defendant's contention that he is practicing 'Federal Law' within the State of Maryland is not supported by the evidence.

"12. The Defendant's contention that his legal work within the State of Maryland is supervised and controlled by his partner, Edward Jasen, is not supported by the evidence, but, to the contrary, the Court finds that the witness, Edward Jasen, the Defendant's partner, actively assists the Defendant in the unauthorized practice of law and receives financial benefit as a result thereof.

"13. The Court finds that this is an extraordinary case, which requires extraordinary measures to protect the interests of the public."

The day after the Circuit Court for Montgomery County entered its permanent injunction the District of Columbia Court of Appeals filed its opinion in Kennedy's grievance matter. The court sustained the findings of the District of Columbia Board on Professional Responsibility that Kennedy

"violated Disciplinary Rule (DR) 3–101(B) by engaging in the practice of law while under suspension and DR 1–102(A)(4) by (1) failing to remit to his law firm [Powers] a retainer fee received from a firm client, (2) instructing another client of the firm to send payment to his new office after he had left the firm, and (3) misrepresenting his current salary to the loan office of a savings and loan institution."

*In re Kennedy,* 542 A.2d at 1226 (footnotes omitted). That court ordered that Kennedy be suspended for ninety days.

In Montgomery County, Kennedy noted an appeal from the injunction and petitioned this Court to issue the writ of certiorari. We granted Kennedy's petition prior to consideration of the matter by the Court of Special Appeals.

It is important to make plain at the outset what this case is and is not. It is a case of a person who is not admitted to practice law in Maryland holding himself out to the public as an attorney engaged in the general practice of law in Maryland from a principal office in Maryland. "The goal of the prohibition against unauthorized practice is to protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation." *In re Application of R.G.S.,* 312 Md. 626, 638, 541 A.2d 977, 983 (1988). Here, Kennedy's difficulties in conforming to ethical standards which ultimately caused his suspension in the District of Columbia have obstructed his admission to the bar in Maryland.

This is not a case involving an interstate partnership of the type envisioned in ABA Comm. on Professional Ethics and Grievances, Formal Op. 316 (1967). One of the conclusions of that opinion was that

"[t]he Canons of Ethics do not prohibit a lawyer in State I from entering into an arrangement with a lawyer in State II for the practice of law by which they share in the responsibility and liability of each other, if they indicate the limitations on their practice in a manner consistent with the canons. Subject to the same limitations, offices

of the firm could be opened in both states. Of course, only the individuals permitted by the laws of their respective states to practice law there would be permitted to do the acts defined by the state as the practice of law in that state, but there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law."

*Cf. Florida Bar v. Savitt,* 363 So.2d 559 (Fla.1978) (presenting a list of prohibited and permitted activities by members of an interstate partnership).[6]

Nor does this case involve defining the degree of activity in Maryland which will constitute the unauthorized practice of law in Maryland by an attorney unadmitted in Maryland who maintains a principal office for the practice of law in that attorney's jurisdiction of admission. *Compare Spanos v. Skouras Theatres Corp.,* 364 F.2d 161 (2d Cir.), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966) (in banc) (client liable for fees for out-of-court services rendered over five year period by attorney admitted in California in connection with antitrust case pending in federal court in New York where, if application had been made, California attorney would have been admitted *pro hac vice* ) *and Appell v. Reiner,* 43 N.J. 313, 204 A.2d 146 (1964) (client's promise to pay fees enforceable where New York attorney's services in New Jersey, where attorney was not admitted, were inseparable from New York aspects of the overall transaction) *with Spivak v. Sachs,* 16 N.Y.2d 163, 263 N.Y.S.2d 953, 211 N.E.2d 329 (1965) (client not liable for fee to attorney admitted in California for advice rendered

---

**6.** We have directed the reader's attention to *Savitt* because it contains the most extensive review of particular activities in an interstate law firm and not because this Court necessarily agrees with the conclusion reached by the Supreme Court of Florida with respect to each activity listed in *Savitt.*

over two week period in New York concerning divorce proceedings in Connecticut).

## I

██ Kennedy submits that the injunction fails to recognize and exclude from its prohibitions his claimed right to practice federal and non-Maryland law. This contention has two aspects. The first prong of the argument rests on Kennedy's status as a member of the bar of the United States District Court for the District of Maryland. That court, of course, controls whom it will recognize as members of its bar. It is not a matter within the direct control of any state court. The decree in this case is not to be interpreted to prohibit Kennedy from appearing before the United States District Court for the District of Maryland any more than it could be interpreted to prohibit appearance before the District of Columbia Court of Appeals where Kennedy is also admitted. Kennedy's right to practice before the local federal court is not limited to physical presence before that court's judges, bankruptcy judges, and magistrates.

## A

The scope of Kennedy's activity as a member of the bar of the federal court in Maryland is analogous to the problem presented in *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Federal statutes authorize the Commissioner of Patents to prescribe regulations governing the recognition and conduct of agents, attorneys and other persons representing applicants before the Patent Office. Sperry, who was a patent agent recognized by the Commissioner of Patents, maintained an office in Tampa, Florida where he held himself out to the public as practicing patent law. The Supreme Court of Florida enjoined Sperry from engaging in the practice of law, including specific prohibitions against rendering legal opinions as to patentability and infringement, and against holding himself out as qualified to prepare and prosecute applications for letters patent.

Applying the Supremacy Clause the Supreme Court vacated and remanded the decree "since it prohibits [Sperry] from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office." *Id.* at 404, 83 S.Ct. at 1336, 10 L.Ed.2d at 443. By a parity of reasoning we construe the injunction in this case not to prohibit Kennedy from performing tasks which are incident to the preparation and prosecution of specific clients' claims or defenses in matters pending before or to be presented to the United States District Court for the District of Maryland.[7]

### B

■ Kennedy further contends that he is free to practice federal and non-Maryland law from his Silver Spring office. This argument does not turn on the tribunal before which a specific item of litigation is pending or is to be filed on behalf of a specific client. The argument turns on the substantive law applicable or potentially applicable to the client's matter and takes us into the area of office practice. But unauthorized practice of law as prohibited by Art. 10, § 1 is not limited to practice utilizing the common law and statutes of Maryland. That construction of the statute would defeat the goal of protecting the public from incompetent and/or unethical practitioners and would be impossible to apply and enforce in the real world. Utilizing legal education, training, and experience an attorney applies the special analysis of the profession to a client's problem. Depending on the problem, that analysis may require consideration of federal, state, local or foreign law. Kennedy's theory of how Art. 10, § 1 operates would permit the unadmitted attorney to enter into attorney-client relationships and permit the unadmitted attorney to advise the client concerning only a portion of the general legal spec-

---

7. At the time of trial Jasen and Kennedy were involved in one bankruptcy matter pending in the United States District Court for the District of Maryland. The nature and extent of the legal services do not appear.

trum but then prohibit the unadmitted attorney from advising as to the balance of the spectrum.

█ As the cases reviewed below, relatively speaking, make plain, advising clients by applying legal principles to the client's problem is practicing law. When Kennedy, who is unadmitted in Maryland, set up his principal office for the practice of law in Maryland and began advising clients and preparing legal documents for them from that office, he engaged in the unauthorized practice of law. This is so whether the legal principles he was applying were established by the law of Montgomery County, the State of Maryland, some other state of the United States, the United States of America, or a foreign nation.

*Ginsburg v. Kovrak,* 392 Pa. 143, 139 A.2d 889 (1958) is on point. A member of the bar of federal courts, including the United States District Court for the Eastern District of Pennsylvania, held himself out as an attorney entitled to practice law in Philadelphia, Pennsylvania although he was not a member of the Pennsylvania bar. Kovrak's specialty was federal taxation. He argued to the Court of Common Pleas of Philadelphia, on exceptions to a chancellor's findings, that he was practicing only federal law. The Court of Common Pleas rejected the argument, saying:

> "The distinction is so dim that we think none exists. As the Chancellor has pointed out, what with only such Federal questions as taxation and basic due process, defendant would have a large field in which to practice. The real point concerns practicing law of any kind and being subject to regulation as to mental and character fitness in the public interest."

139 A.2d at 893.

In a per curiam opinion the Supreme Court of Pennsylvania affirmed, stressing that the injunction prohibited the maintenance of an office and the practice of law in the Commonwealth of Pennsylvania and prohibited Kovrak from advertising that he was authorized to practice law in Pennsylvania. The injunction was said in no way to have

affected Kovrak's right to practice before federal courts. Kovrak's appeal to the United States Supreme Court was dismissed for want of a substantial federal question. 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46 (1958).

In *Leis v. Flynt*, 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717, 723 (1979), the Court cited *Ginsburg v. Kovrak* for the proposition that "the Constitution does not require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another."

Also instructive is *In re Roel*, 3 N.Y.2d 224, 165 N.Y.S.2d 31, 144 N.E.2d 24 (1957), *appeal dismissed*, 355 U.S. 604, 78 S.Ct. 535, 2 L.Ed.2d 524 (1958). Lorenzo Roel was a lawyer admitted to practice in the courts of Mexico but was not admitted in New York where he maintained an office as a "Registered Consulate," a fact which he advertised in daily newspapers. He advised members of the public on Mexican law. This activity was enjoined as the unauthorized practice of law. The court held:

> "We are here examining the nature of the activities performed by appellant, not the sources of authority of the law which he practices. Whether a person gives advice as to New York law, Federal law, the law of a sister State, or the law of a foreign country, he is giving legal advice. Likewise, when legal documents are prepared for layman by a person in the business of preparing such documents, that person is practicing law whether the documents be prepared in conformity with the law of New York or any other law."

*Id.* at 229, 165 N.Y.S.2d at 35, 144 N.E.2d at 26. The court further explained that "[p]rotection of the members of the lay public of our State, when they seek *legal advice*—and that is what defendant purported to furnish—is the basis of the requirements of licensing of attorneys by the State, and this protection must be deemed to embrace whatever kind of law or legal rights the layman seeks advice on...." *Id.* at 231, 165 N.Y.S.2d at 37, 144 N.E.2d at 28.

Consequently we reject Kennedy's argument that the circuit court's injunction should be modified so as to permit Kennedy to carry on an office practice purportedly limited to cogitating on and applying the principles of federal and foreign law.

### C

■ In the conventional factual scenario involving an attorney who is not admitted in Maryland and who maintains a principal office for the practice of law in the jurisdiction where that attorney is admitted, there is no tension between Art. 10, § 1 and admission to the bar of the federal court in Maryland. That federal recognition as an attorney has operated like a safe conduct pass as the unadmitted attorney journeyed to the conclusion of the federal matter while performing in Maryland whatever was reasonably required in the representation of the client. We have also held that a member of the North Carolina bar who counseled the members of a law firm in Maryland had not violated Art. 10, § 1 because that attorney had prepared pleadings and legal memoranda only under the supervision of licensed Maryland attorneys, had not directly advised clients, and had appeared in court only on *pro hac vice* admissions. *In re Application of R.G.S.*, 312 Md. at 631–32, 541 A.2d at 980. *In the Matter of the Reinstatement of Richard C. Murray*, 316 Md. 303, 558 A.2d 710 (1989), Murray, in the period after his disbarment and before his reinstatement, was lawfully employed as a paralegal and office manager at a Maryland law firm. Here Kennedy is not operating in Maryland as a counsellor to Jasen. By establishing a principal office for the practice of law in Maryland where he is not admitted to practice, Kennedy has created tension between his federal bar admission and Art. 10, § 1. *See* 61 Op.Att'y Gen. 43 (1976).

■ Kennedy is the overwhelmingly dominant producer of clients and legal services at his Maryland based firm. The backbone of the practice, collection work for Maryland physicians against Maryland residents, was generated by

Kennedy and the office phase of that practice is his work product. According to Kennedy's testimony on deposition, Kennedy's share of firm profits and losses is three times that of Jasen.[8] Kennedy, assisted by Jasen, has established his law practice in Maryland and holds himself out to the public as practicing law here where his practice is unauthorized and prohibited. Kennedy may not utilize his admission to the bar of the federal court in Maryland, or his admission in Washington, D.C., as a shield against injunctive relief by asserting that he will operate a triage. He is not permitted to sort through clients who may present themselves at his Maryland office and represent only those whose legal matters would require suit or defense in a Washington, D.C. court or in the federal court in Maryland because the very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland. For an unadmitted person to do so on a regular basis from a Maryland principal office is the unauthorized practice of law in Maryland.

For example, *In re Page*, 257 S.W.2d 679 (Mo.1953) involved an attorney who had been disbarred by the Supreme Court of Missouri but who was a member of the bar of the United States District Court for the Western District of Missouri. The attorney was found to be in contempt of the disbarment order by representing a railroad worker in negotiations toward settlement of a claim under the Federal Employers' Liability Act. The attorney's defense was that he could have prosecuted the claim in the federal court where he was admitted. In rejecting this defense the Missouri court held:

---

8. Precisely what the financial arrangement is between the partners remains unclear. Jasen testified that he never received a K–1 for any year of the partnership. The plaintiff attempted to subpoena Kennedy's tax returns but Kennedy testified that he had not filed returns for any year after 1983, although he and his wife were entitled to refunds from her withholding which they had not collected. At that point the trial judge directed counsel for the plaintiff to advise the Internal Revenue Service of the testimony which Kennedy had given.

"The gravamen of the offense with which Page is here charged is his contemptuous violation of the order of this court disbarring him from the practice by holding himself out as a practicing lawyer and, in that capacity, representing Hill in negotiating settlement of a claim that had never reached the Federal, or any other, court."

257 S.W.2d at 683.

*In the Matter of Perrello*, 270 Ind. 390, 386 N.E.2d 174 (1979) a suspended attorney was sentenced to ninety days confinement for contempt of the order of suspension. The attorney was obtaining legal fees from persons charged with crimes in the state court and then brokering the representation to attorneys in good standing to whom the suspended attorney paid a portion of the fee obtained. The suspended attorney contended that he had kept his law office open during the period of the suspension because he was working on cases in the United States District Court for the Southern District of Indiana where he remained eligible to practice. Answering this contention the Indiana court said that "[w]hile we cannot presume to tell the federal courts who they may permit to practice before them or set the standards, qualifications, or limitations they might place on such persons, we nevertheless consider the practice of law in the federal courts in this State to be the practice of law for the purposes of this action." *Id.* at 398, 386 N.E.2d at 179.

We will not go so far as to say that it is theoretically impossible for Kennedy to maintain a principal office in Maryland exclusively for engaging in a practice before the federal court in Maryland and the courts in the District of Columbia. It seems, however, that it would be practically impossible to do so. Nevertheless, we shall not foreclose the possibility of Kennedy's presenting to the Circuit Court for Montgomery County, in the exercise of its continuing jurisdiction over the injunction, any proposal for modification whereby Kennedy, without holding himself out as practicing law in Maryland, could first pinpoint clients whose specific matters actually required counsel before

those courts where Kennedy is currently admitted to practice, and thereby could limit his legal representation in Maryland to those specific matters.[9]

## II

We now turn to the terms of the injunction which was entered. That injunction was necessarily directed at preventing continuation of the illegal conduct in which the court found Kennedy to be engaged. The power of a court of equity in framing an injunction for the purpose of protecting the public from continued illegal activity in the future has been described in the antitrust context by the United States Supreme Court.

"A trial court upon a finding of a conspiracy in restraint of trade and a monopoly has the duty to compel action by the conspirators that will, so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance. Such action is not limited to prohibition of the proven means by which the evil was accomplished, but may range broadly through practices connected with acts actually found to be illegal. Acts entirely proper when viewed alone may be prohibited. The conspirators should, so far as practicable, be denied future benefits from their forbidden conduct.

"The determination of the scope of the decree to accomplish its purpose is peculiarly the responsibility of the trial court. Its opportunity to know the record and to appraise the need for prohibitions or affirmative actions normally exceeds that of any reviewing court. This has been repeatedly recognized by us. Notwithstanding our adherence to trial court responsibility in the molding of a decree as the wisest practice and the most productive of good results, we have never treated that power as one of discretion, subject only to reversal for gross abuse.

---

9. For example, Kennedy might limit his practice from the Silver Spring office to Maryland federal and D.C. cases referred by other attorneys.

Rather we have felt an obligation to intervene in this most significant phase of the case when we concluded there were inappropriate provisions in the decree."

*United States v. United States Gypsum Co.*, 340 U.S. 76, 88–89, 71 S.Ct. 160, 169, 95 L.Ed. 89, 100–01 (1950) (footnotes omitted). And *see United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944); *Cities Service Oil Co. v. Burch*, 29 Md.App. 430, 349 A.2d 279 (1975); *United States v. United Liquors Corp.*, 77 S.Ct. 208, 1 L.Ed.2d 32 (1956) (Justice Reed on request for stay).

Kennedy addresses no objections specifically to the interlocutory injunction which is incorporated into the final decree. His objections go to those paragraphs of the decree set forth below.

"ORDERED, that the Defendant shall, forthwith, arrange with both the C & P Telephone Company and the Donnelly Corporation and any other publishers of legal directories to remove all listings containing his name and a Maryland address from all directories in which he is described in any way as being an attorney[.]"

Kennedy's objection rests on his non-Maryland law argument which we have addressed in part I, *supra*. This prohibition appropriately prevents Kennedy from holding himself out as being admitted in Maryland.

"ORDERED, that the Defendant shall immediately cease interviewing or communicating, orally or in writing, with any clients of his own or of Edward Jasen at, or from, any office or location whatsoever within the State of Maryland[.]"

■ This provision is too broad. It should not prevent Kennedy from utilizing a Maryland office to proceed with the one bankruptcy matter in Maryland and the approximately three cases in Washington, D.C. in which he was engaged at the time of trial. Nor should the injunction prohibit Kennedy from considering, and accepting, representation in any matters before, or to be filed in, those

courts which may come to him in the future in a manner which does not violate the injunction. See part I, *supra.*

"ORDERED, that the Defendant shall, within seven (7) days hereafter, remove from all windows, doors, building registers, or other places of display within the State of Maryland, any references to the name of Thomas F. Kennedy or Jasen & Kennedy, which include the word 'attorney' or 'attorneys'[.]"

 This provision is appropriate because Jasen & Kennedy is not a true interstate partnership. There is no office other than that in Maryland but the principal partner, Kennedy, is not admitted to practice here. *See Florida Bar v. Savitt,* 363 So.2d at 560; ABA Formal Op. 316. Displaying Kennedy's name at the only office misrepresents that he is authorized to practice in this State.

"ORDERED, that the Defendant shall, within fifteen (15) days hereafter, remove from the State of Maryland all equipment, used by him and all personnel employed by him in the practice of law, including his 'collection practice', including all computer equipment, typewriters, calculators, adding machines and photocopying equipment[.]"

 This provision should be stricken. The equipment does not engage in the unauthorized practice of law, Kennedy does. The testimony indicates that the equipment is owned by the firm. Nothing in Art. 10, as contrasted with client preference and Kennedy's control, would prevent Jasen from utilizing the equipment in his practice.

"ORDERED, that the Defendant shall not allow the firm name of Jasen & Kennedy to be used on any pleadings filed in the State of Maryland until such time as a bona fide office for the practice of law as defined in Maryland Rule 1–312(b) has been established by said firm in the District of Columbia[.]"

 Kennedy attacks this provision on the ground that Maryland has no interest in determining what constitutes an office for the practice of law in the District of Columbia.

That objection misses the mark in light of the violations, as disclosed by the record, at which the provision is aimed. Appearances of counsel filed in Maryland courts for clients represented by the firm of Jasen & Kennedy required the signature of Jasen who was the only attorney in the firm admitted in Maryland. *See* Maryland Rules 1–311 and 1–312. Jasen typically entered his appearance by also giving the name of his firm. Then, at hearings, both Kennedy and Jasen would attend and Kennedy would present the client's case. The circuit court could appropriately impede that violation by prohibiting the use of the law firm's name on pleadings and thereby require Jasen to represent the client in court, unless Kennedy obtained a Rule 20 admission, or the client engaged another lawyer.

The clause introduced by "until" simply advises Kennedy that if he establishes a Washington office from which he practices, the firm would then be truly interstate and the circuit court would no longer prohibit use of the firm name on pleadings in Maryland courts when Jasen entered his appearance. Even then Kennedy could not present the client's case other than on a *pro hac vice* admission basis, if permitted by the court. Inasmuch as the "until" clause is not part of the prohibition, it is unnecessary to the decree and should be stricken at this time. Any modifications in the future will depend on facts which cannot now be known.

"ORDERED, that the Defendant shall not accept any fees or division of fees or other compensation relating to the practice of law in the State of Maryland, except for fees generated from services performed in accordance with the provisions of Maryland Rule 20[.]"

██ Kennedy submits this provision "is improper to the extent that it involves fees generated by" non-Maryland and federal matters. Appellant's Brief at 17. We agree that the Rule 20 exception to the prohibition should be enlarged as requested so that the exception includes fees generated on specific matters for identified clients in the federal court

in Maryland and in the courts in the District of Columbia. See part I, *supra.*[10]

"ORDERED, that the Defendant shall not maintain any personal or professional office or working space within the Maryland office location of the firm of Jasen & Kennedy[.]"

■ This provision is too broad and should be stricken. Once again, the space does not engage in the unauthorized practice of law, Kennedy does.

"ORDERED, that the Defendant shall not advise or direct any employees of himself, Edward Jasen or Jasen & Kennedy in the preparation of any legal documents within the State of Maryland[.]"

This provision shall be construed as excluding the permissible non-Maryland practice on the part of Kennedy described in part I.

"ORDERED, that the Defendant shall not physically enter any Courtroom within the State of Maryland in any capacity other than as a party or a witness without having complied strictly with the provisions of Maryland Rule 20[.]"

■ This provision should be modified, as requested by Kennedy, to apply only to courts of the State of Maryland and to permit Kennedy to be present in those courtrooms as a spectator. This means that permission of the presiding judge will be required for Kennedy to be seated at a trial table as a spectator.

"ORDERED, that the Defendant post and maintain a copy of this Injunction in a conspicuous place on the office door of Suite 301, 1015 Spring Street in Silver Spring, Maryland[.]"

---

10. It appears that this provision substantially alters the partnership agreement between Kennedy and Jasen as described by Kennedy on deposition. The fundamental problem was that the agreement was premised on Kennedy's engaging in the unauthorized practice of law. Whatever adjustments Jasen and Kennedy may make in their relationship is not presently before us.

██ This provision is overly broad. It has very little efficacy additional to the prohibition against Kennedy's name appearing on office doors or directories. Thus, its impact bears heavily and adversely on Jasen who is a Maryland admitted practitioner. If Jasen is to be sanctioned, this is not the proceeding in which to do it.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR MODIFICATION OF THE DECREE IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID NINETY PERCENT BY THE APPELLANT AND TEN PERCENT BY THE APPELLEE.