759 A.2d 233

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Charles BRIDGES.**

**No. 83, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 12, 2000.

Melvin Hirshman, Bar Counsel and Delores O. Ridgell, Asst. Bar Counsel, for the Atty. Grievance Com'n of Maryland, Petitioner.

Curtis Anderson, Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Pursuant to Maryland Rule 16–709(a)[1], Bar Counsel, on behalf of the Attorney Grievance Commission (AGC), Petitioner, and at the direction of the Review Board, filed a petition with this Court for disciplinary action against, Charles Bridges, Esquire, Respondent. In the petition, Bar Counsel alleged violations of Rules 5.5(a), 7.1, 7.5, 8.1, and 8.4(d) of the Maryland Rules of Professional Conduct (MRPC) and Maryland Code (1989, 2000 Repl.Vol.), Business Occupations and Professions Article (BOP), § 10–602.[2] In accordance with Maryland Rules 16–709(b) and 16–711(a)[3], this Court referred

---

1. Md. Rule 16–709(a) states that: "[c]harges against any attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

2. The hearing judge inadvertently substituted BOP § 10–601(a) in the place of BOP § 10–602 in his written findings of fact and conclusions of law in this matter.

3. Md. Rule 16–709(b) states that the "Court of Appeals by order may direct that the charges be transmitted to and heard in any court and

the matter to a hearing judge to conduct an evidentiary hearing and make findings of fact and conclusions of law. Following the evidentiary hearing, the judge found by clear and convincing evidence that Respondent violated MRPC Rules 5.5(a), 8.1, 8.4(d), and BOP § 10–602. Respondent filed with us exceptions to the hearing judge's findings of fact and conclusions of law.

## I.

The hearing judge found the following facts as established by clear and convincing evidence:

Respondent, Charles Bridges, was an Army officer, who served in Vietnam. He retired from the U.S. Army Reserves at the rank of Lt. Col. after serving in the Gulf War. Respondent graduated from Cleveland State University Law School in 1979, and was admitted to the Ohio bar in 1985, the Pennsylvania bar in 1986, and the District of Columbia bar in 1987. Additionally, Bridges is admitted to the U.S. District Court for the District of Maryland, the U.S. Court of Military Appeals and the U.S. Court of Veterans Appeals. In 1993, respondent applied to take the Maryland attorneys' bar examination and he was admitted to the Maryland bar on June 20, 1995. Currently, he is on inactive status with the Maryland bar, having relocated to Mississippi where he is serving as an Administrative Law Judge.

During the period 1988 to 1993, the respondent was employed full time as an attorney advisor by the government of the District of Columbia. His employment with the District of Columbia permitted him to conduct an outside practice but he did not see clients in his government office.

---

shall designate the judge or judges to hear the charges and the clerk responsible for maintaining the record in the proceeding."

Md. Rule 16–711(a) states that a "written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

Occasionally, he would interview clients at his residence in Maryland.

Prior to his admission to the Maryland bar, respondent limited his private practice to bankruptcy matters before the U.S. District Court for the District of Maryland, and to cases before the U.S. Court of Veterans Appeals.

When Bridges applied for admission to the Maryland bar in December of 1993, his application included the names of three Maryland residents (Paul and Yvonne Murray and Lowell Osborne), whom he had represented on matters before the federal courts. The evidence does not indicate that respondent advertised his legal services in Maryland telephone directories, on radio or television commercials or in newspapers of general circulation in Maryland. There was no evidence presented to establish that respondent had appeared as an attorney in any Maryland state court or before any administrative board prior to his admission to the Maryland bar. In addition to the clients identified on his Maryland bar application, Bridges testified that he represented fewer than five clients in each year between 1993 and his admission in 1995.

On or about August 25, 1995 and September 18, 1995, the AGC received complaint forms from Kaibeh Johnson (hereafter referred to as "Johnson"), alleging that an attorney named Albert Carter (hereafter referred to as "Carter") had received more than $1200 from Johnson [in 1994] in return for legal services which Carter failed to provide. Carter has never been admitted to the Maryland bar.

The investigation was assigned to AGC investigator Marc O. Fiedler (hereafter referred to as "Fiedler"), who was familiar with Carter from an unrelated investigation in 1988 or 1989. Johnson provided the AGC with photocopies of canceled checks made payable to Carter. On or about September 26, 1995, she [Johnson] sent a photocopy of a letter dated February 6, 1995, addressed "To Whom It May Concern." The letterhead on which the letter is written appears as follows:

CHARLES BRIDGES
ATTORNEY AND COUNSELOR AT LAW
P.O. BOX 22988
BALTIMORE, MD 21203

_____

(410) 433–5847

The body of the letter reads as follows:

This letter is to certify that Mr. Albert Carter, was employed in this law office as Independent Paralegal/Assistant Appellate Counsel durning [sic] January 10, 1987 to Present.

Mr. Carter's total compensation income from January 1, 1994 to December 31, 1994 were [sic] $25,410.00.

This office placed Mr. Carter on non-employee compensation of $470.00 a week to worked [sic] as independent paralegal/assistant appellate counsel.

Under the signature line it says "Charles Bridges" and under that "Attorney at Law." The name "Charles Bridges" is written above the signature line.

In October, 1995 Fiedler was assigned to investigate the Johnson complaints. He spoke with Carter at his residence in Baltimore. Carter described himself as a paralegal, legal assistant, financial advisor, bookkeeper and accountant. He operated his business from his residence. Carter acknowledged knowing and providing certain services to Johnson and indicated that he had assisted Johnson with preparation of an immigration application. He explained that he was sponsoring Johnson's friend, a resident of the Ivory Coast, and that the [6 February 1995] letter [on Bridge's letterhead] was part of the application for a visitor's visa. Carter further related to Fiedler that he was required to provide proof of his employment and income as part of the application for the visa. Therefore, he drafted the February 6, 1995 letter and obtained the respondent's signature. Fiedler was unable to confirm with Carter the truth of the information concerning Carter's compensation as set forth in the February 6, 1995 letter. Carter promised to provide

further information but he failed to keep a subsequent appointment and provided no further information to Fiedler.

On November 15, 1995 Fiedler met with the respondent at his 5816 Loch Raven Blvd. residence in Baltimore City. Fiedler testified that the respondent acknowledged signing the February 6, 1995 letter produced by Carter.[ ] Bridges became upset that Fiedler did not have other documents to which he claimed the letter had been attached when he signed it. Fiedler testified that respondent was unable to recall the specific nature of the other documents, and yet Bridges told him that he recalled signing similar letters in the past, verifying Carter's employment.

Respondent denied any contact with Johnson and any knowledge of legal services or matters performed by Carter for Johnson. Bridges advised Fiedler that Carter was an independent contractor who performed legal bookkeeping services for him and was paid in cash on a piecemeal basis. Carter's services were used in bankruptcy cases, and in matters before the U.S. Court of Veterans Appeals. Bridges refused to produce documents concerning the amounts of money that he had paid to Carter for his services over the years.

Following the meeting, Fiedler received some documents by mail from respondent. These documents included an application for a visa and the February 6, 1995 letter. No cover letter or other explanation was included. In January, 1996 Fiedler met with Johnson and confirmed that, while she was aware of Charles Bridges through her interaction with Carter and the documents he provided, including the February 6, 1995 letter, she had no direct contact with the respondent.

On May 8, 1996 respondent was notified by the AGC that it had docketed a case concerning the Johnson complaints and a request was made that he provide written responses to specific questions relating to the February 6, 1995 letter and his relationship with Carter. Two additional letters were forwarded to Bridges by the AGC. The respondent acknowledged receipt of these letters.

On June 28, 1996 the AGC received a letter from the respondent dated June 27, 1996 which denied the allegations contained in the Johnson complaints and any involvement with Carter in connection with those matters. Bridges challenged the jurisdiction of the AGC and complained that its actions against him were motivated by "a racial animus since it [was] unsupported by any evidence relating to the issues." He suggested that [Fiedler's] conduct should be investigated.

The Commission wrote to respondent again on July 5, 1996 requesting explanation of the February 6, 1995 letter, authentication of the signature, and the documentation for compensation paid to Carter during the period January 1, 1994 through December 31, 1994. Bridges responded in a letter dated July 11, 1996, requesting that Assistant Bar Counsel answer specific questions. He was advised by letter dated July 23, 1996 that the AGC declined to provide answers to his questions. Petitioner insisted that he respond to the requests made in the July 5 letter within ten days. Bridges was reminded that Rule of Professional Conduct 8.1 requires a lawyer, in connection with a disciplinary matter, not to knowingly fail to respond to lawful demands for information by a disciplinary authority.

Respondent replied on July 28, 1996, again requesting that further information be provided to him and asserting that he was being defamed and/or his civil rights being violated. He continued to challenge the AGC's jurisdiction in this case.

In July, 1996 a subpoena was issued to the respondent by bar counsel for records regarding compensation paid by the respondent to Carter. Fiedler placed two telephone calls to the respondent in an effort to arrange service of the subpoena. Bridges acknowledged that he was advised of the subpoena by Fiedler and testified that he informed Fiedler that there were no relevant records available. In the second telephone conversation, respondent became angry with Fiedler and indicated that he was not going to cooperate.

On December 17, 1996 respondent was notified that an inquiry panel had been appointed to hear the complaints against him and that Roger K. Garfink, Esquire (hereafter referred to as "the chairman") had been appointed as chair of the panel. He was advised of the Rules of Professional Conduct which he was alleged to have violated.[ ]

There followed a series of written communications between the respondent and the chairman. On December 30, 1996 respondent forwarded a "Memorandum" in which he again challenged the personal jurisdiction of the AGC because he had not been a member of the Maryland bar at the time of the alleged violations. While denying that he was involved in the practice of law within the State of Maryland, however, Bridges acknowledged that he was admitted to practice before the U.S. District Court in Maryland and that he had handled a limited number of specific client claims and defenses before the Bankruptcy Court from his personal office in his home.

On February 21, 1997 the chairman notified respondent that the inquiry panel had concluded that a hearing was necessary and had established a date of March 11, 1997 at 10:00 a.m., at the chairman's office, 100 S. Charles Street in Baltimore. The respondent wrote to the chairman on February 26, 1997, requesting information concerning witnesses and documents relating to the upcoming hearing. On February 27, 1996 Bridges sent the chairman a motion to dismiss the complaint for lack of jurisdiction and a request for a stay of the hearing pending a ruling on the motion. He included a memorandum in support of the motion to dismiss for lack of jurisdiction and a motion for the continuance of the panel hearing. Bridges indicated that he would be out of state attending a previously scheduled mandatory job training course until March 28, 1997. He requested that a hearing be rescheduled after April 3, 1997.

Bridges was notified by the AGC on March 10, 1997 that the chairman had granted his request for a continuance. The letter also documented that a telephone message providing this information had been left on the respondent's

office answering machine, including the information that he would be advised as to the new date, place and time for the rescheduled hearing. On March 13, 1997 the chairman wrote to the respondent, notifying him that the hearing had been rescheduled for April 17, 1997 at 10:00 a.m., in the chairman's office, 100 S. Charles Street, Baltimore, Maryland.

Bridges responded with a motion (second request) to dismiss the complaint for lack of jurisdiction and the failure to state an actionable claim for violation of the Rules of Professional Conduct and renewed requests for a ruling prior to any hearing. The document contains a certificate of service of March 31, 1997. Respondent complained that the panel had deliberately failed to rule on his jurisdictional motion and that the AGC was continuing to harass and wrongfully prosecute him for the sole purpose of conducting a racially biased unlawful prosecution in order to find something with which to charge him other than the claims asserted in the Johnson complaints. Respondent argued that bar counsel had engaged in *ex parte* communications with the panel, failed to report a felony, failed to conduct an impartial investigation, failed to investigate and address the issue of jurisdiction when raised in May, 1996, and exceeded her authority by wrongfully prosecuting the respondent for racial purposes in order to harm him, in violation of his civil rights.

Assistant Bar Counsel responded to Bridges on April 3, 1997 with copies of subpoenas issued for witnesses to be presented at the April 17 hearing and informing him that Fiedler would also be called as a witness. The panel convened on April 17, 1997 at 10:00 a.m. Commission counsel was present but the respondent did not appear. The following day the chairman sent the respondent a letter, advising him that the panel had convened and that, when he failed to appear by 10:30 a.m., the chairman had placed a call to the telephone number previously provided by the respondent and left a message on his answering machine that the hearing had convened and that the panel was

awaiting his presence. The panel remained for several hours, awaiting the respondent's appearance. The chairman's letter also advised respondent that the panel had previously deferred consideration of his motions until the hearing, at which time it intended to treat them as a preliminary matter. The chairman noted that he had left the respondent a telephone message concerning the deferral of the motions and that he had not heard from Bridges following either telephone message.

The chairman further informed the respondent that, when the panel convened on April 17, 1997, and he failed to appear, it took up his jurisdictional motions and denied them based upon the evidence before it, concluding that he had been engaged in the practice of law in Maryland and was subject to the jurisdiction of the AGC. Bridges was notified that another hearing had been scheduled for Wednesday, May 28, 1997, at 10:00 a.m. in the chairman's office in Baltimore. Respondent was encouraged to call the chairman at the number provided.

A second notice was forwarded in writing to the respondent on April 21, 1997 at the 5816 Loch Raven Blvd. address in Baltimore. This letter was mailed by regular first class and by certified mail, return receipt requested. It contained the following statement: "You're advised that this letter serves as a subpoena pursuant to Rule 16–706d.3.(d) in that it specifically requires your personal attendance at the date, time and place of the hearing and day to day thereafter until the completion of said hearing, . . . ." The return receipt appears to have been signed by Harry Bridges, respondent's brother.

On April 17, 1997 the chairman requested that Fiedler personally attempt to serve a copy of a letter notifying the respondent of the rescheduled date. Fiedler's efforts to locate the respondent at his Baltimore residence were unsuccessful. He contacted the Clients' Security Trust Fund and learned that the respondent had filed a change of address with that office. This document was stamped as received on April 22, 1997 and was completed by the respon-

dent, providing a billing address in Hattiesburg, Mississippi with an alternative address at his family's home, located at 2711 East Federal Street in Baltimore. This information had not been provided to the AGC.

Thereafter, a copy of the subpoena/letter previously sent to 5816 Loch Raven Blvd. was re-mailed to respondent on May 16, 1997, at the address in Mississippi. At the hearing, the uncontradicted testimony of Fiedler was that he had telephoned the respondent at one of the numbers provided on the change of address form and had spoken to him. During this conversation, he inquired whether the respondent had received notice of the new hearing date. The respondent informed him that he had received notification but he refused to tell Fiedler whether he intended to attend the hearing. Fiedler further testified that Bridges had become angry and accused Fiedler of lying, being a racist, obtaining his telephone number unlawfully, harassing him and not knowing his job.

The panel convened again on May 28, 1997. The respondent did not appear. While waiting for the respondent to arrive, a letter and other documents from the respondent were delivered to the chairman. Along with the letter was a renewed motion to dismiss and quash any subpoena issued for lack of jurisdiction and a request that the matter be forwarded for resolution to the Court of Appeals for determination of any misconduct by the panel and the bar counsel. In this communication, the respondent requested that the panel resolve the jurisdiction issue prior to holding a hearing and forward the matter to the Court of Appeals. He also alleged, among other things, that the panel had disregarded the jurisdiction issue and thereby harassed him and violated his civil rights. This letter is dated May 20, 1997. The motion contains a signed certificate of service dated May 27, 1997.

Based on the aforementioned findings of fact, the hearing judge concluded that Respondent violated:

1. **MRPC Rule 5.5(a)—Unauthorized practice of law.**
A lawyer shall not:
(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

2. **BOP § 10–602—Misrepresentation as authorized practitioner.**
Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including "lawyer", "attorney at law", or "counselor at law", by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State.

3. **MRPC Rule 8.1—Bar admission and disciplinary matters.**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.[4]

4. **MRPC 8.4(d) Misconduct.**
It is professional misconduct for a lawyer to:
* * * * *

(d) engage in conduct that is prejudicial to the administration of justice.

Respondent filed exceptions challenging this Court's jurisdiction over the matter, as well as the hearing judge's findings and conclusions that Respondent violated MRPC Rule 5.5(a), 8.1, 8.4(d), and BOP § 10–602.

---

4. Information otherwise protected by MRPC 1.6 is not implicated in this case.

## II.

Respondent suggests this Court lacks jurisdiction to entertain the present proceeding against him because he was not admitted to the Maryland Bar on 6 February 1995, the date of the letter on his letterhead that first attracted Bar Counsel's attention to him. He argues that this case is solely within federal jurisdiction as the subject of Ms. Johnson's complaints and Bar Counsel's initial investigation was an immigration matter exclusively within the jurisdiction of the federal courts.[5] Respondent maintains, alternatively, that he had no legal involvement with the immigration matter, only Albert Carter did. According to Respondent, because he never had an attorney-client relationship with Ms. Johnson, he had no continuing obligation to supervise Carter with respect to the immigration matter. Respondent contends finally that, during the relevant period, he never held himself out to Ms. Johnson or the Maryland public as a Maryland attorney, and therefore he should not be subject to the jurisdiction of this Court.

We find Respondent's jurisdictional arguments to be meritless. This Court unquestionably has the authority to preside over Respondent's disciplinary proceeding. State jurisdiction over attorney disciplinary proceedings is vested in this Court. *See* Md. Rule 16–709(b); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999); *Attorney Griev. Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Griev. Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Griev. Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Griev. Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). The power to decide whether a lawyer has violated the Rules of Professional Conduct within

---

5. Respondent also alleges that Bar Counsel's petition was motivated by "a racial animus since it [was] unsupported by the evidence relating to the issues" and that Bar Counsel violated his civil rights. Respondent, however, fails to provide any factual basis or evidence supporting these accusations, and therefore we decline to address them.

this State ultimately rests with this Court. *See Sheridan,* 357 Md. at 17, 741 A.2d at 1152; *Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997); *Attorney Griev. Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995); *Attorney Griev. Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994). Based on the facts before us, the Attorney Grievance Commission properly investigated Ms. Johnson's complaints and the Inquiry Panel and hearing judge properly assumed the discharge of their respective roles in the process.

It is accurate to state that Ms. Johnson's complaints to the AGC were the impetus for initiating this matter. Equally so, the complaints were directed at Carter, who Ms. Johnson believed to be an attorney practicing in Maryland. Johnson alleged that Carter was paid $1200 for the preparation of an immigration application which he allegedly failed to complete. In the course of investigating Ms. Johnson's complaints, Bar Counsel examined the visa application that Carter was preparing for Ms. Johnson. The application contained the letter dated 6 February 1995, written by Carter and apparently signed by Respondent, indicating Carter was not an attorney, but rather an employee of Respondent, arguably rendering Respondent responsible for insuring that the legal services to Ms. Johnson were provided competently. *See* MRPC 5.3.[6]

---

**6.** MRPC 5.3. Responsibilities regarding nonlawyer assistants.

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and

Bar Counsel, therefore, had the jurisdiction and duty to investigate the exact nature of the professional relationship between Carter and Respondent, if any, because it was related directly to its investigation of Carter and reasonable to do so under the circumstances.

Respondent's argument that this Court lacks jurisdiction because he was not a member of the Maryland Bar during the initial phase of the investigation is inaccurate. Respondent was admitted to the Maryland Bar on 20 June 1995 and Ms. Johnson's complaints to the AGC were not filed until 25 August 1995 and 18 September 1995, well after Respondent's admission to the Maryland Bar.

Even considering the 6 February 1995 date on the letter on Bridge's letterhead, this Court's jurisdiction is supported by MRPC 8.5(b), which states in pertinent part:

A lawyer not admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for conduct that constitutes a violation of these Rules and that: (1) involves the practice of law in this State by that lawyer.

Md. Rule 16–701(a), moreover, states:

Attorney means any person admitted by the Court of Appeals to practice law. For purposes of discipline or inactive status, the term also includes a member of the bar of any other state, district, or territory of the United States who engages in the practice of law in this State, or holds himself or herself out as practicing law in this State, or who has the obligation of supervision or control over another attorney who engages in the practice of law in this State.

We acknowledge that to be subject to the Court's discipline, one must be an attorney. *See* Md. Rule 16–701(a). We also note that the determination of what constitutes the practice of law is ultimately one that this Court makes. *See Public Serv. Comm'n v. Hahn Transp., Inc.,* 253 Md. 571, 583, 253 A.2d

---

knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

845, 852 (1969); *Lukas v. Bar Ass'n of Montgomery County, Inc.,* 35 Md.App. 442, 447, 371 A.2d 669, 672 (1977). The 6 February 1995 letter contained in the visa application suggested that Carter was undertaking legal transactions while in Respondent's employment. Therefore, Respondent potentially had "the obligation of supervision" of Carter. *See* Md. Rule 16–701(a). Respondent also testified he "practice[d] law in this state" by handling up to 5 federal cases per year in Maryland. Thus, Respondent placed himself within the reach of our disciplinary investigatory authority under MRPC 8.5(b). *See Attorney Griev. Comm'n v. Hallmon,* 343 Md. 390, 681 A.2d 510 (1996) (holding an attorney's adequate supervision of legal assistants is an ethical requirement). Moreover, Respondent's admission to the bars of Ohio, Pennsylvania, and the District of Columbia unquestionably comports with the definition of an attorney under Md. Rule 16–701. Respondent, therefore, shall not escape our jurisdiction by claiming that he was not an attorney licensed to practice in Maryland when the alleged initial misconduct took place.

## III.

We now turn to Respondent's exceptions relating to the content and the sufficiency of the findings of fact and conclusions of law made by the hearing judge. As stated earlier, we exercise the State's jurisdiction over attorney disciplinary proceedings. *See* Md. Rule 16–709(b); *Sheridan,* 357 Md. at 17, 741 A.2d at 1152; *Adams,* 349 Md. at 93, 706 A.2d at 1083; *Glenn,* 341 Md. at 470, 671 A.2d at 473; *Kent,* 337 Md. at 371, 653 A.2d at 914; *Powell,* 328 Md. at 287, 614 A.2d at 108. This Court makes the "ultimate decision as to whether a lawyer has violated the professional rules." *See* Md. Rule 16–709; *Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995). The burden is on Bar Counsel to prove each of the allegations charged against Respondent by clear and convincing evidence. *See* Md. Rule 16–710(d); *Attorney Griev. Comm'n v. Bakas,* 322 Md. 603, 606, 589 A.2d 52, 53 (1991); *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 608, 541 A.2d 966, 968 (1988); *Bar Ass'n of Baltimore City v. Marshall,* 269

Md. 510, 516, 307 A.2d 677, 681 (1973). Respondent, conversely, need only establish factual matters in his defense by a preponderance of the evidence, including whether mitigating circumstances existed at the time of the alleged misconduct. *Powell,* 328 Md. at 288, 614 A.2d at 108; *Bakas,* 322 Md. at 606, 589 A.2d at 53. We also keep in mind that the hearing judge's findings of fact are *prima facie* correct and will not be disturbed unless found to be clearly erroneous. *See Attorney Griev. Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985); *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983) (citing *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981)). We give deference to the hearing judge's finding on the credibility of a witness, as he or she is in the best position to assess, for example, the witness's mannerisms and idiosyncracies. *See Glenn,* 341 Md. at 470, 671 A.2d at 474; *Bakas,* 323 Md. at 402–403, 593 A.2d at 1087.

## A.

### *MRPC 5.5(a) and BOP, § 10–602*

■ Petitioner charged Respondent with engaging in the unauthorized practice of law, prior to his admission to the Maryland bar, by conducting his federal practice from his Maryland residence. This contention, if established by clear and convincing evidence, would violate both MRPC 5.5(a), which states, in pertinent part, "A lawyer shall not ... practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction," and BOP, § 10–602, which declares that

> [u]nless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including "lawyer", "attorney at law", or "counselor at law", by description of services, methods, or procedures or otherwise, that the person is authorized to practice law in the State.

Respondent argues, under *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), that because he was duly

admitted to practice before the U.S. District Court for Maryland he was entitled to maintain a limited practice dealing exclusively with federal matters in the federal court in Maryland, prior to his admission to this State's bar. Respondent further argues that he falls within the exception established in *Kennedy v. Bar Assoc. of Montgomery County, Inc.*, 316 Md. 646, 561 A.2d 200 (1989), which, he argues, permits him to practice in the federal arena in Maryland, prior to his admission to the Maryland Bar. We agree.

The hearing judge found Respondent violated both MRPC 5.5(a) and BOP § 10–602 because Bridges maintained a legal practice, however small, from his home in Baltimore City, prior to his admission to the Maryland Bar. In finding these violations, the hearing judge, relying on *Attorney Griev. Comm'n v. Harris–Smith*, 356 Md. 72, 737 A.2d 567 (1999), stated that:

> (a) an unadmitted attorney may not maintain a principal office for the practice of law in Maryland;  (b) interviewing, analyzing, and explaining legal issues to clients on a regular basis amounts to the practice of law in this state, even if the lawyer's court appearances are limited to those federal fora in which he is duly admitted;  (c) it is virtually impossible to maintain a law office in Maryland limited only to federal cases and (d) the right to practice in a specific court does not amount to the right to practice law generally within that jurisdiction.

The hearing judge noted that Respondent testified he usually met with clients at the U.S. Courthouse in Baltimore or in their homes, but would occasionally advise clients from his Baltimore home, during which time he would apply legal principles to his clients' problems. The hearing judge determined that under *Harris–Smith*, these activities constitute the unauthorized practice of law in Maryland. *Harris–Smith*, 356 Md. at 82, 737 A.2d at 572. He supported his determination by pointing out Respondent testified he used business cards and stationary containing his name followed by the designation "Attorney and Counselor at Law" and listing a

Maryland postal box and telephone number, prior to admission to the Maryland bar.

*Harris–Smith* is distinguishable from the present case. We agree that Respondent was not duly admitted to practice law in Maryland similarly to the disciplined attorney in *Harris–Smith*. Unlike Respondent, that attorney conclusively held herself out to the public as a Maryland attorney. *See Harris–Smith,* 356 Md. at 78, 737 A.2d at 570. She represented herself to the public in Maryland in radio advertisements and the classified telephone directory as a named partner in a Maryland firm. In both advertisements, the firm was promoted as practicing in areas of Maryland and federal law. *See Harris–Smith,* 356 Md. at 76–77, 737 A.2d. at 569. Furthermore, in both the classified telephone directory and her business cards, Harris–Smith's name was listed in her firm's name (Craig, Harris, Henderson & Johnson), with a Landover, Maryland, street address. *Harris–Smith,* 356 Md. at 76, 737 A.2d at 569. She also testified that she met with 15 clients per week while working in her Landover office. Harris–Smith, therefore, was ineligible for protection under *Sperry* and *Kennedy* because, prior to passing the Maryland bar, she definitively held herself out to the public as a Maryland attorney.

In the present case, the hearing judge found that Respondent maintained only "a very limited private legal practice," prior to his admission to the Maryland bar. The hearing judge found no evidence that he advertised through the telephone directory or other public media. Respondent, moreover, did not hang a shingle or sign outside his residence (or advertise on the face of the dwelling) to indicate that he practiced law, nor was there any indication that clients were visiting his residence on a regular basis.

The hearing judge erred in dismissing Respondent's argument made under *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). In *Sperry,* the Supreme Court recognized an attorney's right to maintain a legal practice restricted to performing tasks and preparing for matters

before the federal courts in which he or she was duly admitted, prior to admission to that state's bar. *Sperry,* 373 U.S. at 404, 83 S.Ct. at 1336, 10 L.Ed.2d at 443. Sperry was a patent agent registered to practice before the United States Patent Office. He maintained an office in Tampa, Florida, where he held himself out to the public as practicing patent law. Sperry, however, had not been admitted to the Florida bar. The Supreme Court of Florida issued a decree enjoining Sperry from rendering legal opinions as to patentability and infringement, and from holding himself out as qualified to prepare and prosecute applications for letters patent. The Supreme Court vacated and remanded the case, holding that the Florida Supreme Court's decree violated the Supremacy Clause of the United States Constitution because it "prohibits [Sperry] from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office." *Id.* The Court further held that Sperry was entitled to perform these tasks under federal statute and Patent Office regulations authorizing practice before the Patent Office by non-lawyers, which trumps Florida's state law. *See Sperry,* 373 U.S. at 385, 83 S.Ct. at 1326, 10 L.Ed.2d at 432. The Court reasoned that "Florida may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of federal authority." *Id.*

We relied on *Sperry* in *Kennedy v. Bar Association of Montgomery County, Inc.,* 316 Md. 646, 561 A.2d 200 (1989). Kennedy was not admitted to practice in Maryland, but was licensed in the District of Columbia and the United States District Court for the District of Maryland. We affirmed, in part, a trial court's injunction against Kennedy enjoining him from the general practice of law in this State because he maintained his principal law office in Silver Spring, Maryland, while advising clients and preparing legal documents for them from that office, without gaining admittance to the Maryland bar. We stated, however, that the injunction against Kennedy was over broad to the extent it "would prohibit Kennedy from considering, and accepting representation in any matters before, or to be filed in the Maryland [U.S.] District Court which

may come to him in a manner which does not violate the injunction." *Kennedy,* 316 Md. at 669–670, 561 A.2d at 212. We explained that:

> [w]e shall not foreclose the possibility of Kennedy's presenting to the Circuit Court for Montgomery County, in the exercise of its continuing jurisdiction over the injunction, any proposal for modification whereby Kennedy, without holding himself out as practicing law in Maryland, could first pinpoint clients whose specific matters actually required counsel before those courts where Kennedy is currently admitted to practice, and thereby could limit his legal representation in Maryland to those specific matters.

*Kennedy,* 316 Md. at 667–668, 561 A.2d at 211. Thus, an exception was created in *Kennedy* which permitted an attorney, who was not admitted to the Maryland bar, to practice before the federal courts in Maryland, so long as he or she did not hold himself or herself out as a practicing lawyer in Maryland and focused exclusively on clients whose matters were to be heard in federal courts only. *See id.* We hold, under the exception acknowledged in *Kennedy,* that Respondent was permitted to maintain his specific and limited federal practice in Maryland, prior to his admission to the Maryland bar, without being in violation of MRPC 5.5(a) and BOP § 10–602.

In summary, there is not clear and convincing evidence that Respondent held himself out as an attorney practicing law in Maryland within the proscription of the Md.Code or our rules of conduct for attorneys. Respondent did not maintain a regular Maryland office for the practice of law, advertise in any capacity, distribute business cards stating a Maryland street address, hang a shingle outside of his home, or create letterhead with a Maryland address where he could be found. Respondent testified that he only solicited his clients through various federal registries, and never through a general public solicitation. There is evidence that Respondent did, on occasion, meet with clients in his home, however, this is consistent with both *Sperry* and *Kennedy,* and is insufficient to support a violation. As a result, we sustain Respondent's exception and

find that Bar Counsel did not establish by clear and convincing evidence that Respondent violated MRPC 5.5(a) and BOP § 10–602.

## B.

### *MRPC 8.1*

■ Upon our review of the record, we hold that the hearing judge's determination that Respondent violated MRPC 8.1 is supported by clear and convincing evidence. There is evidence that Respondent refused to provide requested information, failed to cooperate with the Inquiry Panel, and destroyed relevant documents. Respondent's actions, therefore, violate MRPC 8.1(b), which states: "a lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority . . . ."

Respondent takes exception to the hearing judge's conclusion, contending that his actions were reasonable in light of his jurisdictional challenge. He contends that he responded to Bar Counsel's demands on several occasions, either by telephone or in writing, and then challenged the legality of their demands. Respondent argues that MRPC 8.1 did not require his attendance at the Inquiry Panel proceedings, nor is there any Maryland precedent for disciplining an attorney based solely on failure to attend such a hearing. Respondent, additionally, contends that Bar Counsel did not request the relevant documents that he destroyed until after he had been appointed to the position of administrative law judge. Respondent suggests that his new position required him "to divest all vestiges of his private practice," which Respondent interpreted to include destroying his old business cards and stationary. We overrule Respondent's exceptions.

■ The record reveals that Respondent refused to provide requested documents concerning the background and details of his employment of Carter, including the nature of Carter's services and compensation paid to Carter. Bar Counsel issued a subpoena for these documents in July 1996;

however, Respondent failed to produce any of the documents requested. Bar Counsel continued to write numerous letters to Respondent requesting the documents. Rather than producing the subpoenaed documents, Respondent countered by challenging Bar Counsel's jurisdiction and requesting further information. Even though the initial complaints were directed at Carter, Respondent was required to provide this relevant information because MRPC 8.1 mandates that an attorney must respond adequately to the demands of a disciplinary authority concerning his or her employees. *See Hallmon,* 343 Md. at 408, 681 A.2d. at 519 (holding that "[a] demand by a disciplinary authority for information, . . . may relate to the conduct of the lawyer from whom the information is sought, or it may relate to the conduct of another").

Respondent's misconduct continued when he was notified by letter and telephone of the Inquiry Panel's evidentiary hearing scheduled for 17 April 1997. He did not appear. Respondent's absence is particularly inexcusable considering he failed to appear when the Inquiry Panel accommodated his schedule with the hearing date. As a result of Respondent's failure to appear, the evidentiary hearing was rescheduled for 28 May 1997. Respondent was notified by telephone, letter, and subpoena of the new hearing date.[7] Despite the subpoena, the Respondent again failed to appear at the evidentiary hearing.[8]

Respondent's conduct is analogous to the attorney disciplined in *Attorney Griev. Comm'n v. Hallmon,* 343 Md. 390, 407, 681 A.2d 510 (1996). In *Hallmon,* an attorney was charged, inter alia, with violating MRPC 8.1(b). *See Hallmon,*

---

7. The Inquiry Panel is provided with subpoena power to aid in the investigation of possible attorney misconduct and need not demonstrate an ethical violation has incurred in order to justify the issuance of a subpoena. *See Attorney Griev. Comm'n v. Stewart,* 285 Md. 251, 259, 401 A.2d 1026 (1979) and Md. Rule 16–706(c).

8. Although Respondent's absence at the evidentiary hearings was also rude and inconsiderate of the Inquiry Panel members and Bar Counsel, we need not posit our determination that he violated MRPC 8.1 based on this aspect of his conduct because his additional misconduct is more than adequate to support a violation.

343 Md. at 393–394, 681 A.2d at 512. The Court found the attorney violated MRPC 8.1(b) by refusing to be interviewed by an investigator, even when the purpose of the interview was primarily to investigate another attorney and despite Bar Counsel's written request for him to meet with the investigator. *See Hallmon*, 343 Md. at 408, 681 A.2d at 519; *See also Attorney Grievance Comm'n v. Nisbett*, 316 Md. 464, 464–470, 560 A.2d 18, 18–21 (1989).

Respondent's testimony before the hearing judge confirmed his earlier misconduct. The hearing judge stated that he was "left with the distinct impression that Respondent's inability to provide information throughout these proceedings constituted a direct attempt to conceal inappropriate behavior on his part." He also determined that Respondent was not credible when testifying about his relationship with Carter or the keeping of records concerning Carter's services. As stated earlier, we give deference to the hearing judge's credibility determinations, as he is in the best position to assess the witnesses' credibility. *See Glenn*, 341 Md. at 470, 671 A.2d at 474; *Bakas*, 323 Md. at 402–403, 593 A.2d at 1087. Based on the record, the hearing judge's findings of fact are not clearly erroneous. Respondent's lack of credible testimony, coupled with his aforementioned misconduct, establishes clear and convincing evidence that he violated MRPC 8.1(b).

## C.

### *MRPC 8.4(d)*

We also conclude there was clear and convincing evidence to support the hearing judge's conclusion that Respondent violated MRPC 8.4(d). It is evident from the record that Respondent refused to provide requested information, concealed his whereabouts from the AGC after he moved from 5816 Loch Raven Blvd., and did not appear for two evidentiary hearings conducted by the Inquiry Panel. Based on our view of Respondent's improper behavior, we agree with the hearing judge that Respondent "engage[d] in conduct that is prejudicial to the administration of justice." *See* MRPC 8.4(d).

Respondent incorporated his exceptions regarding MRPC 8.1 into his exceptions for MRPC 8.4(d). He additionally points out that the Inquiry Panel found there was insufficient evidence that he violated MRPC 8.4(d) and urges us to hold the same.

Respondent's exceptions are unfounded. Clear and convincing evidence establishes that Respondent was sent numerous written requests for information concerning his involvement with Carter, but he repeatedly refused to provide the requested information. It is also clear from the record, despite issuance of a subpoena, that Respondent failed to appear at two evidentiary hearings scheduled by the Inquiry Panel and he did not inform the Panel that he would not be present.[9]

Respondent urges this Court to adopt the Inquiry Panel's determination that there was insufficient evidence that he violated MRPC 8.4(d). Although the Inquiry Panel's work is "of invaluable assistance," this Court is not bound by the findings of the Inquiry Panel. *See In re Barton,* 291 Md. 61, 65, 432 A.2d 1335, 1337 (1981). Unlike the Inquiry Panel in this matter, the hearing judge had the opportunity to gauge Respondent's credibility by observing his demeanor on the witness stand. The hearing judge found that Respondent's credibility was "sorely lacking" and cited his demeanor on the witness stand and his lack of credibility as reasons for finding a violation of MRPC 8.4(d). The hearing judge stated that Respondent testified in a manner "that indicated he either considered these proceedings as trivial or he failed to perceive the need to be truthful even when under oath." As noted

---

9. Although we do not consider Respondent's conduct at the time he was served with notice of the hearing before the hearing judge in our determination whether Respondent violated MRPC 8.4(d), we note it nonetheless because it is consistent with the caliber of misconduct that preceded it. According to the process server's proof of service report, after the process server called Respondent by his name and stated he had a summons for him, Respondent "turned and began to run" as the process server approached. The report continues that upon being handed the summons, Respondent chased the process server back to his car and "slung" the summons into the backseat of the process server's car.

*supra,* this Court gives deference to the hearing judge's finding on a witness's credibility. We hold there was sufficient evidence to support the hearing judge's conclusion that Respondent violated MRPC 8.4(d). Respondent's exceptions are overruled.

## VI.

### *Sanctions*

Having determined Respondent violated MRPC 8.1 and 8.4(d) by clear and convincing evidence, we now address what sanction will be imposed. Bar Counsel recommends "Respondent's license to practice law be suspended indefinitely with the right to apply for reinstatement no sooner than six months from the date the suspension commenced, that his reinstatement be conditioned upon his payment of all costs, and proof provided to bar counsel that he successfully completed a course on Professional Responsibility." Conversely, Respondent argues he did not violate the Rules and therefore he should not be sanctioned.

Regarding the proper sanction to apply in an attorney grievance case, we refer to *Attorney Griev. Comm'n v. Brown,* 353 Md. 271, 295, 725 A.2d 1069, 1080 (1999), where we stated:

> "[T]he purpose disciplinary proceedings against an attorney is to protect the public rather than to punish the erring attorney. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. The severity of the sanction depends upon the facts and circumstances of the case before this Court. Imposing a sanction protects the public interest because it demonstrates to members of the legal profession the type of conduct which will not be tolerated."

(citations and internal quotations omitted).

In support of Bar Counsel's indefinite suspension recommendation, it refers us to *Attorney Griev. Comm'n v. Hallmon,* 343 Md. 390, 681 A.2d 510 (1996), where the attorney

violated both MRPC 5.5 and 8.1, and was suspended from the practice of law for 90 days. A suspension is not warranted in the present case because Respondent did not violate MRPC 5.5. Under the circumstances of this case, we deem it appropriate to issue to Respondent a reprimand.

*IT IS ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES BRIDGES.*

Dissenting opinion by RAKER, J., joined by RODOWSKY, J..

RAKER, Judge, dissenting:

It is clear that in Maryland, as in most jurisdictions, failure to cooperate with disciplinary authorities may constitute attorney misconduct under Maryland Rule 8.1(b). *See Attorney Griev. Comm. v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998)(stating that "[a]s an attorney licensed to practice law in the State of Maryland, Respondent has submitted to the exclusive disciplinary jurisdiction of this Court. The refusal of an attorney to respond to a demand by the disciplinary authority is sanctionable conduct under Rule 8.1(b)"); *see also Attorney Griev. Comm. v. Hallmon*, 343 Md. 390, 681 A.2d 510 (1996). This Court has previously noted that "[t]he gravity of the misconduct is not measured solely by the number of rules broken, but is determined largely by the lawyer's conduct." *Milliken*, 348 Md. at 519, 704 A.2d at 1241. I agree with the majority that Respondent's conduct constituted a violation of that rule. There is no doubt that full disclosure of facts and circumstances surrounding alleged misconduct is fundamental to Bar Counsel's responsibility of investigating complaints.

I part company with the majority, however, as to the appropriate sanction in this case. I would impose a suspen-

sion for ten days. In imposing a sanction for attorney misconduct, the severity of the sanction depends on the facts and circumstances of each case. The purpose of the sanction is not to punish the lawyer, but, as the majority notes, it is to protect the public and demonstrate to lawyers that the particular conduct will not be tolerated.

While a public reprimand is often fitting for failure to respond to inquiries of Bar Counsel, in my view, it is not the appropriate discipline in this case. Respondent refused to provide the requested information to Bar Counsel, refused to provide requested documents, and indeed, destroyed some of them, and attempted to evade the disciplinary authorities. He failed to appear at the inquiry panel hearing and refused to cooperate with the panel. The hearing judge stated that he was "left with the distinct impression that Respondent's inability to provide information throughout these proceedings constituted a direct attempt to conceal inappropriate behavior on his part." This Court found these findings of fact not clearly erroneous. Respondent's conduct in this case was egregious and should be considered an aggravating factor in imposing a sanction.

With the exception of the privilege against self incrimination, *see Spevack v. Klein,* 385 U.S. 511, 516, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) and Maryland Rule 1.6, Confidentiality of Information, an attorney is required to cooperate with Bar Counsel in discipline matters. It cannot be questioned that "[i]t is vital to the accused lawyer, the members of the bar, and the general public that a complaint against a lawyer be promptly investigated and evaluated." *Committee on Prof'l. Ethics and Conduct of the Iowa State Bar Assoc. v. Horn,* 379 N.W.2d 6, 8 (1985). Indeed, in holding that even though the disciplinary complaint was dismissed, the attorney could be disciplined for failure to cooperate with the disciplinary authority, the Washington Supreme Court said:

Compliance with these [state bar] rules is vital. The practice of law has been a profession of the highest order since its inception and it must continue to be so. Internal investigation of a complaint is an integral part of the machinery

for handling charges regarding the ethics and conduct of the attorneys admitted to practice before this court. Public confidence in the legal profession, and the deterrence of misconduct, require prompt, complete investigations. The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the Bar Association is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys cooperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes. Accordingly, an attorney who disregards his [or her] professional duty to cooperate with the [disciplinary authority] must be subject to severe sanctions.

*In re Clark*, 99 Wash.2d 702, 663 P.2d 1339, 1341–42 (1983).

Although any sanction this Court imposes is serious, I believe that a reprimand, under the circumstances presented herein, sends the wrong message. Respondent's failure to cooperate, and his destruction of records was viewed by the hearing court, and this Court, as an attempt to cover up his inappropriate behavior. A greater sanction than a reprimand under these particular circumstances is required. An attorney should not be permitted to ignore investigative inquiries and gamble that the complainant or other witnesses would not be available to develop the facts at a later time.

Judge RODOWSKY has authorized me to state that he joins in the views expressed in this dissenting opinion.