**Luis RAMIREZ Plaintiff**

v.

**Gordon R. ENGLAND, Secretary, Department of the Navy Defendant**

**No. RWT 03–CV–1174.**

United States District Court, D. Maryland.

June 4, 2004.

Karl J. Protil, Jr., Shulman Rogers Gandal Pordy and Ecker PA, Rockville, MD, Lisa Lyons Ward, Ellicott City, MD, for Plaintiff.

Tarra DeShields Minnis, Office of the United States Attorney, Baltimore, MD, for Defendant.

## *MEMORANDUM OPINION*

TITUS, District Judge.

Before the Court for consideration is a motion filed by Karl J. Protil, Jr., a num-

ber of the bar of this Court, for the admission of Lisa Lyons Ward to appear *pro hac vice* as counsel for the Plaintiff. (Paper No. 16) For the reasons set forth below, the motion, by separate Order, will be denied.

### Factual and Procedural History

#### (i) The Proceedings in the U.S. District Court for the District of Columbia

On April 19, 2002, the Plaintiff filed a Complaint and Demand for Jury Trial against the Defendant in the United States District Court for the District of Columbia. The Complaint was signed personally by the Plaintiff as well as by Ms. Ward, who gave as her *only address* "Office of Lisa Lyons Ward, 4638 Chatsworth Way, Ellicott City, Maryland 21043." The Complaint contained office and fax telephone members, both of which contained a Maryland area code.

On October 15, 2002, the Defendant filed a Motion to Dismiss or, in the Alternative, to Transfer to the District of Maryland. Following the filing of an Opposition by the Plaintiff on November 12, 2002, United States District Judge Reggie B. Walton entered a Memorandum Opinion and Order on December 6, 2002, transferring the case to this district.

The case was docketed in this district on April 21, 2003. On the following day, notification was forwarded by the Clerk of this Court advising both counsel of the docketing of the case, and enclosing a copy of the Local Rule 101 governing representation of parties by members of the bar of this Court.

#### (ii) Initial Proceedings in This Court

The case was transferred to the undersigned on November 26, 2003. Upon an examination of the file, it was noted that the United States District Court for the District of Columbia had only partially disposed of the Motion filed by the Defen-

dant, and that there remained for decision by the Court the issue of sufficiency of the Complaint which had been tested by the Defendant's alternative Motion to Dismiss. Unsuccessful efforts were then made by the undersigned's law clerk to reach counsel for the Plaintiff for the purpose of scheduling a hearing on the Motion by placing telephone calls to the Maryland telephone number contained on the Complaint filed in the District of Columbia. After these attempts to reach Ms. Ward by telephone were unsuccessful, a letter was sent to her by the undersigned dated February 23, 2004 requesting that she advise whether she or some other attorney intended to represent the Plaintiff in the proceedings pending before this Court, pointing out that she was not a member of the bar of this Court, and advising her that she would need to have counsel admitted to practice before this Court enter his or her appearance and move for her admission *pro hac vice* if she intended to proceed with the case.

#### (iii) The Motion for Admission of Ms. Ward Pro Hac Vice

On March 2, 2004, Mr. Protil moved for the admission of Ms. Ward *pro hac vice*. In the Motion, he stated that Ms. Ward is a member of the bar of the Mississippi Supreme Court, having been admitted to practice on April 26, 1990. The Motion also pointed out that she was admitted to practice before the United States District Court for the District of Columbia on April 7, 2002, as well as by the Northern and Southern Districts of the United States District Court for the District of Mississippi on November 5, 2001.

Upon review of the Motion for the admission of Ms. Ward *pro hac vice*, the undersigned requested that his law clerk attempt to reach counsel for the parties for the purpose of scheduling a hearing on the

Motion. The Maryland number supplied by Ms. Ward was answered by an answering machine which did not identify the number reached other than by telephone number. A separate call placed to the Mississippi number supplied by Mr. Protil in his motion for the admission of Ms. Ward was answered by an answering machine which identified it only as "law offices," with a recorded message supplying a menu of names from which to select which did not include Ms. Ward. When these efforts to reach Ms. Ward were unsuccessful, the law clerk to the undersigned reached Mr. Protil who stated that he was unavailable on the date on which the Court intended to schedule a hearing, and advised the law clerk that Ms. Ward practices out of her home in Ellicott City.

By letter dated March 22, 2004, the undersigned requested that additional information be submitted to the Court concerning Ms. Ward's law practice, noting that her actions in Maryland might constitute the unauthorized practice of law. The Court requested that detailed information be submitted concerning the circumstances surrounding the maintenance by Ms. Ward of an office in her Maryland home, and how her representation of the Plaintiff in this case comports with applicable law.[1]

### (iv) The Hearing on the Motion

On April 26, 2004, a hearing was held before the Court on the Motion for Admission *Pro Hac Vice* of Ms. Ward. During the hearing, Ms. Ward testified under oath that she has "a principal office in Jackson, Mississippi," and that she intends to have one "in June, July and August in Biloxi." When pressed for information concerning the actual extent of her physical presence in her principal office, Ms. Ward conceded that she has not been present in her allegedly principal Mississippi office on any occasion during calendar year 2004.[2]

In further testimony, Ms. Ward conceded that she lives with her husband in Ellicott City, and that she considers that to be her "permanent home."[3] She does not have any residence in Mississippi, and stated that when she goes to Mississippi, she stays with her parents who live in Alabama, about sixty miles away from Biloxi. She said that she has "regular" office space with a law school classmate of hers in Jackson, Mississippi. When asked about the answering machine at her alleged Jackson, Mississippi address that did not contain an option for Ms. Ward, she gave a confusing answer in which she said that her secretary, Fannie, or a receptionist usually takes the phone. However, a

---

1. *Elezovic v. England,* Civil No. PJM 03–3649, is another case pending before this Court that was transferred here by the United States District Court for the District of Columbia, and which was originally filed by Ms. Ward in that jurisdiction. By Memorandum dated April 14, 2004, Judge Peter J. Messitte of this Court also observed that Ms. Ward may be engaged in the practice of law in this State, and requested that his concerns be addressed within ten days. No response was received by Judge Messitte or filed with the Clerk of this Court, but Ms. Ward filed in this case a copy of the letter purportedly filed by her in the case pending before Judge Messitte. (See discussion, below)

2. In unverified correspondence received after the evidentiary hearing, Ms. Ward claimed that she spent a week in Biloxi, Mississippi, during an unspecified period in 2004 in order to meet with a prospective client concerning a worker's compensation claim as well as work on several other legal matters.

3. According to public records of the Maryland Department of Assessments and Taxation, Ms. Ward and her husband, Joseph, acquired their home in a "not arms-length" transaction on August 13, 2002. *See,* http://sdatcert3.re siusa.org/rp_rewrite/results. asp?streetNumber=4638 & streetName=CHATSWORTH & county=14 & intMenu =2 & SearchType=Street & submit4=SEARCH.

call by the law clerk to the undersigned to the Mississippi number was answered by a machine that did not give the option of speaking to a human being. She claimed that she pays for office space in Mississippi and has her own office. In further testimony, Ms. Ward stated that she had been in Mississippi two or three times a month prior to August of 2003, but only a few days after August consisting of two visits, one of which was a weekend visit.

Ms. Ward conceded that she had done most of her work on this case from her home in Ellicott City, which she described as a "home office." She also stated that that is where she does most of her work generally. She denied that she meets with clients in Ellicott City. She claimed that she met with her client in this case in Virginia, but conceded that she met with him once in Maryland at a "Kinko's or something like that." She also stated that she had conferred by telephone with her client in this case from her Ellicott City office, and that she had given him advice during those conversations.

When Ms. Ward was asked why she listed her office address on the pleadings in this case as being in Ellicott City, when her principal office allegedly was in Jackson, Mississippi, she claimed that she had "also listed and notified the District of Columbia, the U.S. District Court there, that I have both addresses, and in fact, that is what appears. I have a standard address or signature block that has both addresses on there." [4] When asked by the Court where she would instruct her client in this matter to contact her if he needs to talk to her about this case, she stated that he would call her in Ellicott City, Maryland.

At the conclusion of the hearing, the Court requested that Ms. Ward provide to the Court a copy of all versions of her letterhead in use for the last two years. Mr. Protil advised the Court that the documents requested during the hearing would be furnished within a week, and that anything by way of "rental agreements or other things that substantiate the maintaining of an office down in Mississippi" would be provided.

On May 6, 2004, Ms. Lyons submitted a letter to the Court. In her letter, she stated that her home office is a "fully-functional office ..., which includes research materials and standard office equipment." However, she claimed that she does not meet with clients in her home office. No documentation was submitted, as promised, concerning rental or any other arrangements for the use of office space in Mississippi.[5]

---

4. As a review of dockets of the U.S. District Court for the District of Columbia, infra, reveals, this statement by Ms. Ward was incorrect in all but five of twenty-three cases filed by her in that court. She further represented to this Court that in pleadings before those filed in the instant case, a complaint would have "listed both addresses," something that is contradicted by public records of the U.S. District Court for the District of Columbia. The first complaint filed by her in that Court that contained, as a second address underneath the Ellicott City, Maryland, address was filed over eight months after the Complaint in this case.

5. Ms. Ward did submit a copy of her letterhead. On the left side, there appears a Jackson, Mississippi address, under which the following statement is included: "Admitted, U.S. District Court, Northern and Southern Districts of Mississippi." On the right side, there appears Ms. Ward's Ellicott City, Maryland address, under which the following statement is included: "Admitted, U.S. District Court, District of Columbia." No indication is given that Ms. Ward is not a member of the Maryland bar.

### (v) Other Proceedings in U.S. District Court for the District of Columbia

A review of the case management/electronic case filing records of the United States District Court for the District of Columbia reveals that Ms. Ward has appeared as counsel of record in a total of twenty-three cases filed between 1999 and July of 2003.[6] Examination of the dockets of these cases shows that in eighteen of the twenty-three cases, the *only address* listed by Ms. Lyons was the Ellicott City address used by her in this case. In the remaining five cases, beginning with a case filed in late December 2002, a second Mississippi address was listed after the Maryland address.

The dockets of these cases also reveal a pattern of neglect to procedural and practice requirements that is alarming. For example, in *Fields v. O'Neill,* No. 99–1108–RWR, filed May 6, 1999, Ms. Ward was admitted *pro hac vice* on April 27, 2001, but was thereafter discharged after a pro se motion was filed by her client discharging Ms. Ward, and stating that "several attempts have been made to contact Mrs. Ward. To date, she has not responded."

In *McKay v. England,* No. 01–2535–JR, a professionally prepared complaint and demand for jury trial was filed on December 7, 2001, by the Plaintiff, purportedly pro se, but with a footnote at the end of the complaint stating that the *"Plaintiff's attorney,* Lisa Lyons Ward, expects to file, by the close of the week ending December 7, 2001, a motion for admission, *pro hac vice,* following her December 5, 2001 admission into the U.S. Federal District Courts for the Northern and Southern Districts of Mississippi and subsequently for admission to the U.S. Federal District Court for the District of Columbia." (emphasis added) As noted above, Ms. Ward was not admitted to the bar of the United States District Court for the District of Columbia until April 7, 2002. Summary judgment was ultimately entered against Ms. Ward's client and an appeal to the United States Court of Appeals for the District of Columbia was dismissed.

In *O'Neal v. England,* No. 02–172–RWR–DAR, a professionally prepared complaint was filed on January 31, 2002, which was signed both by the Plaintiff, purportedly pro se, and by Ms. Ward, with a similar footnote at the end of the complaint reading as follows: "The undersigned counsel is an attorney admitted to practice with U.S. District Courts for the Northern and Southern District Courts of Mississippi, who have reciprocity with this Honorable Court. The undersigned counsel has an application pending for admission to this Honorable Court." Ms. Ward entered her appearance formally in that case on June 21, 2002, and summary judgment was later entered against her client.

---

6. *See, Fields v. O'Neill, et al.,* Case No. 99–cv–1108–RWR; *McKay v. England,* Case No. 01–cv–2535–JR; *Montes v. International Brotherhood of Electrical Workers, AFL–CIO,* Case No. 02–cv–66–CKK; *O'Neal v. England,* Case No. 02–cv–172–RWR–DAR; *Brewer v. England,* Case No. 02–cv–310–RBW; *DeLeon v. England,* Case No. 02–cv–473–EGS; *Nails v. England,* Case No. 02–cv–573–RWR; *Ramirez v. England,* Case No. 02–cv–742–RBW; *Dixon v. England,* Case No. 02–cv–823–JR; *Brooks–Miller v. England,* Case No. 02–cv–888–RJL; *Aceto v. England,* Case No. 02–cv–949–RMU; *Boykin v. England,* Case No. 02–cv–950–JDB; *Carroll v. England,* Case No. 02–cv–1072–HHK; *Johnson v. England,* Case No. 02–cv–1453–PLF; *Harris v. Potter,* Case No. 02–cv–1491–EGS; *Lyles v. White,* Case No. 02–cv–1780–RMC; *Pollock v. White,* Case No. 02–cv–1869–JR; *Cabera v. England,* Case No. 02–cv–2037–HHK; *Lee v. England,* Case No. 02–cv–2521–JR; *Gaines v. Potter,* Case No. 03–cv–53–RMU; *Elezovic v. England,* Case No. 03–cv–131–JDB; *Medley v. Donaldson,* Case No. 03–cv–1482–GK; *Wright v. England,* Case No. 03–cv–132–HHK.

On March 13, 2002, a professionally prepared complaint was filed in the case of *DeLeon v. England*, No. 02–473–EGS, again purportedly pro se, but which was also signed by Ms. Ward, and contained a footnote reading as follows: "The undersigned counsel is an attorney admitted to practice with U.S. District Courts for the Northern and Southern District Courts of Mississippi, who have reciprocity with this Honorable Court. The undersigned counsel has an application pending for admission to this Honorable Court."

In *Nails v. England*, No. 02–573–RWR, another professionally prepared complaint, purportedly filed pro se, was filed on March 25, 2002, and Ms. Ward entered her appearance in that case on May 3, 2002, shortly after her admission to the bar of that court. Ultimately, a Motion to Dismiss was granted with respect to two counts of the complaint, and summary judgment granted as to the remainder.

In *Dixon v. England*, No. 02–823–JR, Ms. Ward filed a complaint on April 30, 2002 using only her Ellicott City address, but the complaint was dismissed by the Court *sua sponte* for failure to effect service on the Defendant. After reconsideration of the Order of dismissal was denied, an appeal was taken to the U.S. Court of Appeals for the District of Columbia Circuit which affirmed.

In *Johnson v. England*, No. 02–1453–PLF, the Court directed the Plaintiff to show cause why the case should not be dismissed for failure to effect service upon the Defendant, and, when no response was filed, the Court dismissed the matter without prejudice. An appeal was taken to the U.S. Court of Appeals for the District of Columbia Circuit, but by Order filed January 9, 2004, the appeal was dismissed because the Appellant failed to file a brief by December 4, 2003, as directed by Court Order entered October 21, 2003.

In *Lyles v. White*, No. 02–1780–RMC, a complaint filed by Ms. Ward was dismissed by the Court when she failed to respond to a Motion to Dismiss, and no appeal was taken.

In *Cabera v. England*, No. 02–2037–HHK, the Court dismissed the Complaint on May 2, 2003 for failure of the Plaintiff to effect service on the Defendant. No appeal was filed.

In *Wright v. England*, No. 03–132–HHK, a complaint filed by Ms. Ward on behalf of her client on January 29, 2003, was dismissed by the Court on December 14, 2003, for failure to effect service on the Defendant. Again, no appeal was filed.

In *Medley v. Donaldson*, No. 03–1482–GK, Ms. Ward filed a complaint on behalf of her client on July 3, 2003, but by Memorandum Opinion filed March 23, 2004, the Court dismissed the action for failure to effect service upon the Defendant in a timely manner, the Court noting that the Plaintiff failed to show any good cause for her failure to timely serve the Defendant. No appeal was filed.

### Applicable Law

Admission to the bar of this Court *pro hac vice* is governed by Local Rule 101.1.b. This rule provides that the Court "may permit any attorney, except a member of the Maryland bar, who is a member in good standing of the bar of any other United States Court or the highest court of any state to appear and participate as counsel in a particular civil case. Such permission shall not constitute formal admission to the Bar of this Court. However, an attorney admitted *pro hac vice* is subject to the disciplinary jurisdiction of this Court. Any party represented by an attorney who has been admitted *pro hac vice* must also be represented by an attorney who has been formally admitted to the bar of this Court."

■ In contrast to general admission to the bar of a state or of a federal court, the Supreme Court of the United States has held that where, as here, authority to approve a *pro hac vice* appearance is consigned to the discretion of the court, there is a not a cognizable property interest within the terms of the Fourteenth Amendment, and the United States Constitution does not obligate a court to afford a *pro hac vice* applicant with procedural due process in passing on an application for permission to appear *pro hac vice. Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). In a similar vein, the United States Court of Appeals for the Fourth Circuit has stated that "[i]t is well settled that permission to a non-resident attorney, who has not been admitted to practice in a court, to appear *pro hac vice* in a case there pending is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the presiding judge." *Thomas v. Cassidy,* 249 F.2d 91 (1957). In *Thomas,* denial of admission *pro hac vice* was upheld where the lower court concluded that the attorney had been guilty of "unlawyer-like conduct in connection with a case in which she wished to appear." *Id.*

■ Rule 5.5 of the Maryland Rules of Professional Conduct provides that a lawyer shall not "practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Thus, the unauthorized practice of law may not only constitute a violation of law, but also of applicable ethical standards for lawyers.

The Supreme Court of the United States has recognized that "[i]n view of the high mobility of the bar, and also the trend toward specialization," allowing an out-of-state lawyer the privilege of appearing upon motion, especially when associated with a member of the local bar, is perhaps "a practice to be encouraged." *Leis,* 439 U.S. at 441–42, 99 S.Ct. at 700, 58 L.Ed.2d at 721. Recognizing, among others, this increasing mobility of the bar, the American Bar Association created in 1997 "The Commission on Evaluation of the Rules of Professional Conduct," better known as the "Ethics 2000 Commission." The Ethics 2000 Commission issued recommendations, which were then debated and adopted in various forms by the American Bar Association House of Delegates. In April 2002, the Court of Appeals of Maryland appointed a Select Committee to examine the Ethics 2000 changes to the ABA model rules and recommend which changes, if any, would be appropriate for the Maryland Rules of Professional Conduct. The report of the Select Committee is now before the Court of Appeals of Maryland for consideration and possible adoption.[7]

The Select Committee has recommended extensive revisions to Rule 5.5, including changing its title to "Unauthorized Practice of Law; Multi–Jurisdictional Practice of Law." An examination of the proposal now pending before the Court of Appeals of Maryland shows that it would not change the basic command prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction. However, the draft rule goes on to provide that a lawyer "who is not admitted to practice in this jurisdiction shall not: (1) except as authorized by these rules or other law, establish an office or other *systematic and continuous presence* in this jurisdiction for the practice of law." (emphasis added) In recognition of the mobility of lawyers and the occasional need for *pro hac vice* admissions, the proposed revisions to the rule authorize a lawyer admitted in another

---

7. See http://www.courts.state.md.us/lawyers- ropc_finalrept03.pdf

United States jurisdiction to provide "legal services on a *temporary basis* in this jurisdiction that: (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter." (emphasis added) In Comment 4 to the proposed new rule, it is noted that a "lawyer who is not admitted to practice generally in this jurisdiction violates paragraph (b) if the lawyer *establishes an office or other systematic and continuous presence* in this jurisdiction for the practice of law." (emphasis added)

Local Rule LCvR 83.8(a) of the United States District Court for the District of Columbia, the jurisdiction in which this matter was originally filed by Ms. Ward, provides that "(a)dmission to and *continuing membership* in the Bar of this court are limited to attorneys who are (1) active members in good standing in the District of Columbia bar; or (2) active members in good standing of the highest court of any state *in which the attorney maintains his/ her principal law office* and is a member in good standing of a United States District Court that provides for reciprocal admission to members of the bar of this court." (Emphasis added) Thus, membership in the bar of that Court requires, both at the time of admission and thereafter as a continuing condition, that one either be a member of the District of Columbia bar or be a member in good standing of the bar of the State in which one's principal office for the practice of law is located, provided that the attorney is also a member of the bar of the federal court of that state that provides for reciprocal admission for members of the District of Columbia federal bar.

The logic of the District of Columbia rule is readily apparent. If an attorney is a member of the District of Columbia Bar, effective local disciplinary processes are readily available. If not, then effective disciplinary processes are available in the jurisdiction in which the attorney's principal office is located. This logic would be defeated if an attorney were able to secure admission based on membership in the bar of one state, yet maintain his or her principal office in another state without the benefit of that state's licensure, and with no jurisdiction having effective, local disciplinary processes at its disposal.

### Findings of Fact

Based upon the testimony of Ms. Ward, the exhibits, correspondence and review of the public dockets of the United States District Court for the District of Columbia, the Court makes the following findings of fact with respect to the application for the admission *pro hac vice* of Ms. Ward:

1. Ms. Ward is a permanent resident of the State of Maryland.

2. Ms. Ward maintains a fully functional office for the practice of law in Ellicott City in the State of Maryland.

3. Ms. Ward has used her Ellicott City address on all of the twenty-three cases filed by her in the United States District Court for the District of Columbia, and in only five of such cases did she add, as an additional address, a Mississippi office.

4. Ms. Ward prepared and filed pleadings on behalf of clients in the United States District Court for the District of Columbia prior to her admission to the bar of that Court.

5. Ms. Ward neglected to effect service of process on public agency Defendants in at least five cases in the United States District Court for the District of Columbia, resulting in the dismissal of claims filed by her on behalf of her clients.

### Conclusions of Law

 As noted above in the discussion of the law applicable to admissions *pro hac*

*vice,* neither the rules of this Court nor the United States Constitution requires the temporary admission to practice of one who is not a member of the bar of this Court. The decision of such a motion is committed to the sound discretion of the Court, and in acting upon such a motion, the Court not only may, but should, take into account whether the attorney in question has demonstrated sufficient competence and character to be permitted, in association with a member of the bar of this Court, to represent a litigant. In making this assessment, a Court may take into account whether the attorney proposed for admission *pro hac vice* has acted in compliance with all applicable laws and rules governing the practice of law in this and other jurisdictions, and whether the applicant has acted competently and responsibly in other proceedings. Based upon the foregoing Findings of Fact, the Court concludes that the motion should be denied for the following reasons:

1. The principal office of Lisa Lyons Ward for the practice of law is located in Ellicott City, Maryland, and not in Mississippi, as she claims.

2. The activities of Ms. Ward in the State of Maryland are in violation of Rule 5.5 of the Maryland Rules of Professional Conduct, and constitute the unauthorized practice of law in Maryland and in this District.

3. Ms. Ward also engaged in the unauthorized practice of law in both Maryland and the District of Columbia in connection with her filing of complaints in the United States District Court for the District of

Columbia prior to the time of her admission to the bar of that Court.

4. Ms. Ward is in violation of the continuing principal office requirement of Local Rule LCvR 83.8(a) of the United States District Court for the District of Columbia in that her principal office is not in Mississippi, but rather in Maryland, where she is not licensed to practice law.[8]

In a letter to the Court submitted after the hearing on the Motion for her admission *pro hac vice,* Ms. Ward attempted to find solace for her practice activities in this case in the State under the decisions of the Court of Appeals of Maryland in *Attorney Grievance Commission of Maryland v. Johnson,* 363 Md. 598, 770 A.2d 130 (2001), *Kennedy v. Bar Association of Montgomery County,* 316 Md. 646, 561 A.2d 200 (1989) and *Attorney Grievance Commission v. Bridges,* 360 Md. 489, 759 A.2d 233 (2000). However, her reliance upon these cases is misplaced.

First, these cases do little to ameliorate the obvious fact that Ms. Ward engaged in the practice of law both in Maryland and the District of Columbia prior to her admission to the bar of the United States District Court for the District of Columbia. Second, these cases provide little comfort for Ms. Ward's obvious disregard of the initial and continuing requirements of the United States District Court for the District of Columbia that her principal office be in the state of admission of the highest court upon which she relies for her reciprocity admission. Third, in light of the Court's finding that Ms. Ward's principal office for the practice of law is located in

---

8. Ms. Ward would also be ineligible for regular admission to the bar of this Court because Local Rule 701.1.a requires, as does the United States District Court for the District of Columbia, that an attorney seeking admission to the bar of this Court on the basis of membership in good standing of the highest court of any state must maintain his or her principal law office *in that state.* Moreover, Ms. Ward, even if she were to become a member of the Maryland bar, would not be eligible for admission *pro hac vice,* but rather would be required to become a regular member of the bar of this Court as provided in Local Rule 101.1.b.

Ellicott City, Maryland, and not in Mississippi, her activities come squarely within the prohibitions announced by the Court of Appeals of Maryland in *Kennedy, supra.* As the Court in *Kennedy* noted, when Kennedy "set up his principal office for the practice of law in Maryland and began advising clients and preparing legal documents for them from that office, he engaged in the unauthorized practice of law. This is so whether the legal principles he was applying were established by the law of Montgomery County, the State of Maryland, some other state of the United States, the United States of America, or a foreign nation." *Kennedy,* 316 Md. at 663, 561 A.2d at 208-9. As the Maryland Court of Appeals further explained, "Kennedy may not utilize his admission to the bar of the federal court in Maryland, or his admission in Washington, D.C., as a shield against the injunctive relief by asserting that he will operate a triage. He is not permitted to sort through clients who may present themselves at his Maryland office and represent only those whose legal matters would require suit or defense in a Washington, D.C. court or in a federal court in Maryland because the very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland. For an unadmitted person to do so *on a regular basis from a Maryland principal office* is the unauthorized practice of

law in Maryland." *Kennedy,* 316 Md. at 666, 561 A.2d at 210. (Emphasis added)

Finally, Ms. Ward can find little comfort from the limited exception recognized in *Kennedy* and applied in *Bridges* that would permit a lawyer, not admitted to the Maryland bar, to practice before federal courts in Maryland where he is admitted, and where he does not maintain a regular Maryland office for the practice of law. Here, Ms. Ward is neither admitted to practice before this Court, nor in Maryland, but maintains her principal office in Maryland. Thus, *Kennedy* and *Bridges* provide no safe harbor for her activities in this State.[9]

### Conclusion

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court concludes that the Motion for the Admission *Pro Hac Vice* of Lisa Lyons Ward must be denied. Ms. Ward has acted with indifference to the licensure requirements of the State of Maryland, this Court, and the United States District Court for the District of Columbia and, in numerous instances, has neglected to prosecute cases, resulting in dismissal of the actions to the detriment of her clients. For these reasons, the Court will exercise its discretion to deny her application.

9. The proposed revisions to Rule 5.5 of the Maryland Rules of Professional Conduct now under consideration by the Court of Appeals of Maryland, which are designed to recognize the increasing mobility of lawyers, would not, even if adopted, protect the activities of Ms. Ward. She has clearly established an office or other systematic and continuous presence in Maryland for the practice of law, and the provision of legal services by her has been anything but temporary. (See Draft Rule 5.5(a) and (b).) Moreover, the proposed rule would not provide any safe harbor for her activities by the inclusion in proposed Rule 5.5(d) of language authorizing a lawyer admitted in another United States jurisdiction to

provide legal services in this jurisdiction that are "services that the lawyer is authorized to provide by federal law or other law of this jurisdiction." This provision, which is obviously intended to follow the decision of the Supreme Court of the United States in *Sperry v. State Bar of Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), provides no legal justification for the activities of Ms. Ward in Maryland, unlike the federal law in *Sperry* that permitted a non-lawyer registered under federal law to practice before the United States Patent Office, to prepare and prosecute patent applications in Florida, notwithstanding his non-membership in the Florida bar.

## *ORDER*

Upon consideration of the Motion To Appear Pro Hac Vice [Paper no. 16] filed by Karl Protil on behalf of Lisa Lyons Ward, and for the reasons stated in the accompanying Memorandum Opinion, it is this 4th day of June, 2004,

**ORDERED,** that the Motion To Appear Pro Hac Vice [Paper No. 16] is **DENIED.**